Slip Op. 08-86

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THAI I-MEI FROZEN FOODS CO., LTD.,** | |
| Plaintiff, | |
| v. | **Before: Timothy C. Stanceu, Judge** |
| **UNITED STATES,** | **Court No. 05-00197** |
| Defendant. | |

## OPINION AND ORDER

[Remanding an antidumping remand redetermination for further proceedings in which the United States Department of Commerce must calculate constructed value profit according to a lawful method]

Dated: August 26, 2008

*Steptoe & Johnson LLP* (*Eric C. Emerson* and *Michael T. Gershberg*) for plaintiff.

*Gregory G. Katsas,* Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); *Nithya Nagarajan*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Stanceu, Judge: Before the court is the less-than-fair-value determination that the United States Department of Commerce (the "Department" or "Commerce") issued on remand following an antidumping investigation of imports of certain frozen warmwater shrimp from Thailand (the "subject merchandise"). Commerce issued the Final Results of Redetermination Pursuant to Court Remand (June 11, 2007) ("Remand Redetermination") in response to the court's decision in *Thai I-Mei Frozen Foods Co., Ltd. v. United States*, 31 CIT ___, 477 F. Supp. 2d 1332 (2007) ("*Thai I-Mei I*"). In *Thai I-Mei I*, the court concluded that Commerce did not

support with adequate reasoning its decision to base its calculation of a constructed value profit rate for Thai I-Mei on only those sales made by the other investigated respondents in a third country (Canada) in the ordinary course of trade. *Thai I-Mei I*, 31 CIT at ___, 477 F. Supp. 2d at 1358. The court directed Commerce to reconsider its determination and to submit a remand redetermination conforming with the opinion and order issued in *Thai I-Mei I. Id.* Specifically, the court ordered Commerce either to recalculate the constructed value profit rate to include the sales that occurred outside the ordinary course of trade or, alternatively, to provide a justification demonstrating that Commerce's existing calculation is supported by substantial record evidence and is otherwise in accordance with law. *Id.*

In the Remand Redetermination, the Department chose the latter course. Rather than change the constructed value profit rate of 9.67% previously calculated for Thai I-Mei, the Remand Redetermination provided a new justification. Remand Redetermination 4; *see also* Br. in Supp. of Pl.'s Mot. for J. on the Agency R. 6. Commerce construed the relevant statutory provisions to express a general congressional preference for excluding from the constructed value profit rate calculation sales that occurred outside the ordinary course of trade. Remand Redetermination 5-6. Commerce also identified the findings of fact on which it relied for its exclusion of the sales outside the ordinary course of trade, and it expressed its position that applying this exclusion to Thai I-Mei's constructed value profit rate allowed for consistency in the treatment of the investigated respondents. *Id.* at 9.

The court concludes that Commerce's Remand Redetermination does not comply with the court's remand instructions because the constructed value profit rate for Thai I-Mei was not determined according to a "reasonable method" as required by the governing statute.

Accordingly, the court is again remanding this matter to Commerce with the directive to

redetermine a constructed value profit rate for Thai I-Mei that is in accordance with law.

## I. BACKGROUND

The court presumes familiarity with the court's opinion in *Thai I-Mei I*, which provides a

background discussion on the less-than-fair-value determination (the "Amended Final

Determination")[1] that plaintiff contests in this judicial proceeding. Below, the court provides

additional background discussion pertaining to the Remand Redetermination now before the

court.

In the antidumping investigation, Commerce calculated the normal value of Thai I-Mei's

merchandise based on constructed value and determined a constructed value profit rate by resort

to § 1677b(e)(2)(B)(iii) ("clause (iii)" or "alternative (iii)"). *See Issues and Decision Mem. for*

*the Antidumping Duty Investigation of Certain Frozen and Canned Warmwater Shrimp from*

*Thailand* at 44-45 (Dec. 23, 2004) ("*Issues and Decision Mem.*"). In pertinent part, clause (iii),

as an alternative to the methods made available in clauses (i) and (ii) of § 1677b(e)(2)(B),

provides that the constructed value profit of imported merchandise may be determined

> based on any other reasonable method, except that the amount allowed for profit
> may not exceed the amount normally realized by exporters or producers . . . in
> connection with the sale, for consumption in the foreign country, of merchandise
> that is in the same general category of products as the subject merchandise . . . .

---

[1] *See Notice of Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances: Certain Frozen and Canned Warmwater Shrimp From Thailand*, 69 Fed. Reg. 76,918 (Dec. 23, 2004), *as amended by Notice of Am. Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Thailand*, 70 Fed. Reg. 5145 (Feb. 1, 2005) ("*Am. Final Determination*").

19 U.S.C. § 1677b(e)(2)(B)(iii) (2000). Commerce used constructed value to determine the normal value of Thai I-Mei's merchandise because Thai I-Mei lacked a viable home market in Thailand, and lacked a viable third country market, for sales of any foreign like product. *See Issues and Decision Mem.* at 44-45. Constructed value profit for Thai I-Mei could not be calculated according to clause (i) because Thai I-Mei did not have home market sales of products in the same general category of products as the subject merchandise. *See id.* at 44; 19 U.S.C. § 1677b(e)(2)(B)(i). Clause (ii) was unavailable because each of the other respondents also lacked a viable home market for sales of foreign like products. *See Issues and Decision Mem.* at 44; 19 U.S.C. § 1677b(e)(2)(B)(ii). Under clause (iii), Commerce calculated a constructed value profit rate for Thai I-Mei using a weighted average of the profits realized by the other investigated respondents in those respondents' third country sales in Canada of foreign like products, in the ordinary course of trade. *See Issues and Decision Mem.* at 44-45; *see also Am. Final Determination*, 70 Fed. Reg. at 5145.

The other investigated respondents are Andaman Seafood Co., Ltd., Chanthaburi Seafoods Co., Ltd., and Thailand Fishery Cold Storage Public Co., Ltd. (collectively "the Rubicon Group") and Union Frozen Products Co., Ltd. ("UFP"). *Am. Final Determination*, 70 Fed. Reg. at 5145. In the antidumping investigation, Commerce used Canada as the third country comparison market for the Rubicon Group and UFP. *See Notice of Prelim. Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Negative Critical Circumstances Determination: Certain Frozen and Canned Warmwater Shrimp From Thailand*, 69 Fed. Reg. 47,100, 47,106-07 (Aug. 4, 2004) ("*Prelim. Determination*"). Commerce determined that, for shrimp products sold by the Rubicon Group

and UFP in Canada during the period of investigation that were comparable to subject merchandise, more than twenty percent of the sales were made at prices less than the cost of production and at prices that would not permit the recovery of all costs within a reasonable period of time. *Id.* at 47,108. Commerce excluded these "below-cost" sales pursuant to 19 U.S.C. § 1677b(b)(1) and thereby used only sales that occurred in the ordinary course of trade as the basis for determining the normal value of the Rubicon Group's and UFP's subject merchandise that was comparable to the merchandise sold in Canada. *Id.*

For subject merchandise of the Rubicon Group and UFP for which there were no sales in Canada of any comparable shrimp product in the ordinary course of trade, Commerce determined normal value according to constructed value. *Id.*; *see* Remand Redetermination 8 (citing *Calculations Performed for the Am. Final Determination in the Investigation of Certain Frozen and Canned Warmwater Shrimp from Thailand: the Rubicon Group* (Jan. 26, 2005) (Proprietary Admin. R. Doc. No. 155) and *Calculations Performed for the Am. Final Determination in the Investigation of Certain Frozen and Canned Warmwater Shrimp from Thailand: UFP* (Jan. 26, 2005) (Proprietary Admin. R. Doc. No. 156)). Commerce calculated a constructed value profit rate for each of these two respondents under 19 U.S.C. § 1677b(e)(2)(A) based on profits that each realized on its sales of foreign like products in Canada in the ordinary course of trade. Remand Redetermination 8-9.

In calculating, under clause (iii), the profit component of the constructed value of Thai I-Mei's sales of subject merchandise, Commerce excluded the below-cost sales of the other two respondents, concluding that these sales were outside the ordinary course of trade. *Prelim. Determination* at 47,108-09; *see* 19 U.S.C. § 1677(15) (2000). Commerce's method yielded the

9.67% constructed value profit rate for Thai I-Mei. *Thai I-Mei I*, 31 CIT ___, 477 F. Supp. 2d

at 1338 (citing Br. in Supp. of Pl.'s Mot. for J. on the Agency R. 6). Use of this rate resulted in

an amended final margin for Thai I-Mei of 5.29%. *Am. Final Determination*, 70 Fed. Reg.

at 5146.

In *Thai I-Mei I*, the court ordered Commerce to reconsider its decision to exclude sales

outside the ordinary course of trade when calculating Thai I-Mei's constructed value profit rate.

The court concluded that Commerce failed to provide a satisfactory explanation for its exclusion

of these sales and instead relied on a "vague policy preference." *Thai I-Mei I*, 31 CIT at ___,

477 F. Supp. 2d at 1357. The court noted that language in the preamble accompanying the

promulgation of 19 C.F.R. § 351.405 (the "Preamble") stated that, with respect to constructed

value determined according to alternative (iii), "*depending on the circumstances and the*

*availability of data, there may be instances* in which the Department would consider it necessary

to exclude certain home market sales that are outside the ordinary course of trade in order to

compute a reasonable measure of profit for [constructed value] . . . ." *Id.* at ___, 477 F. Supp. 2d

at 1356 (quoting *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,358-59

(May 19, 1997) (the "*Preamble*")). In *Thai I-Mei I*, the court found that Commerce failed to

identify in its decision memorandum the specific factual findings that constituted appropriate

"circumstances" for excluding the sales made outside the ordinary course of trade. *Id.* With

respect to the reference to "any other reasonable method" in clause (iii), the court noted that

Commerce is required to "'provide to interested parties a description of the method chosen and

an explanation of why it was selected.'" *Id.* at ___, 477 F. Supp. 2d at 1357 (quoting *Geum*

*Poong Corp. v. United States*, 26 CIT 322, 323 n.2, 193 F. Supp. 2d 1363, 1365 n.2 (2002)

("*Geum Poong II*") (quoting *Uruguay Round Agreements Act*, *Statement of Administrative Action*, H.R. Doc. No. 103-316, at 840 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4176) ("*SAA*"))). The court directed Commerce either to recalculate Thai I-Mei's constructed value profit rate by including in the calculation the data derived from third country sales of the Rubicon Group and UFP that occurred outside the ordinary course of trade or, alternatively, to provide in the remand determination a justification that (1) addresses the objections discussed in the court's opinion and order, and (2) sets forth reasons sufficient to support a conclusion that a calculation of the constructed value profit rate that excludes the data derived from sales of the Rubicon Group and UFP occurring outside the ordinary course of trade was supported by substantial evidence on the record and was otherwise in accordance with law. *Id.* at ___, 477 F. Supp. 2d at 1358.

Commerce issued a draft remand redetermination on May 8, 2007. Remand Redetermination 2. Plaintiff filed comments objecting to the draft redetermination on May 15, 2007. *Id.* Commerce issued the Remand Redetermination on June 11, 2007. In the Remand Redetermination, rather than recalculate Thai I-Mei's constructed value profit rate, Commerce included a new justification for excluding the sales outside the ordinary course of trade and allowed plaintiff the opportunity to comment on the reasonableness of its method. *Id.* at 4-19. In the Remand Redetermination, Commerce interpreted 19 U.S.C. § 1677b(e)(2)(A) to express a general preference that sales made outside the ordinary course of trade be excluded from the calculation of constructed value profit, which preference Commerce considered relevant to its selecting a "reasonable method" under alternative (iii). *Id.* at 6. Commerce listed record facts in support of its decision to exclude sales outside the ordinary course of trade. *Id.* at 7. Commerce

concluded by explaining that excluding the other respondents' sales made outside the ordinary course of trade from Thai I-Mei's profit calculation enabled the agency to apply a consistent constructed value profit calculation methodology to all three investigated respondents. *Id.* at 9.

## II. DISCUSSION

The court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) (2000) and 19 U.S.C. § 1516a(a)(2)(B)(i) (2000). The standard of review, as set forth in 19 U.S.C. § 1516a(b)(1)(B)(i), requires that the court hold unlawful a final determination of Commerce if it is found to be unsupported by substantial evidence on the record or is otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

The parties disagree on whether the Remand Redetermination is supported by a reasoned explanation for the exclusion of the non-ordinary-course third-country sales of the Rubicon Group and UFP. Plaintiff requests that the court again remand this case to Commerce and instruct the agency to recalculate Thai I-Mei's constructed value profit rate to include those sales. *See* Pl.'s Comments Regarding Final Results of Redetermination Pursuant to Remand 21 ("Pl.'s Comments"). Plaintiff argues that the Department's calculation of constructed value profit under 19 U.S.C. § 1677b(e)(2)(B)(iii) is unsupported by substantial record evidence and is not in accordance with law. *See* Pl.'s Comments 4-20. Plaintiff alleges that the reasons Commerce identified in support of its decision in the Remand Redetermination–*i.e.*, a statutory preference for excluding sales that are not in the ordinary course of trade, certain record facts, and the goal of treating all three respondents consistently in the constructed value profit methodology–do not constitute a reasoned explanation supporting Commerce's determination of constructed value profit for Thai I-Mei. *Id.* Plaintiff argues that the existence of a preferred

method does not create a statutory preference that constructed value profit be based upon sales made in the ordinary course of trade and that the "any reasonable method" language contained in § 1677b(e)(2)(B)(iii) does not contain a hidden statutory preference for excluding sales made outside the ordinary course of trade. *Id.* at 14-19.

Defendant urges the court to sustain the Remand Redetermination, arguing that Commerce provided a reasoned explanation for the decision to exclude the sales outside the ordinary course of trade when calculating Thai I-Mei's constructed value profit rate and that the Remand Redetermination complies with the court's order in *Thai I-Mei I*. Def.'s Resp. to Thai I-Mei's Remand Comments 2-3, 5 ("Def.'s Resp."). Defendant maintains that the court should grant "maximum deference" to Commerce's choice under alternative (iii) of a method that is specific to the facts of this case and should sustain that decision unless "manifestly unreasonable." *Id.* at 6 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984)).

The court's inquiry into whether the method Commerce used is a "reasonable method" for determining constructed value profit under alternative (iii) must be guided by fundamental principles embodied in the antidumping statute. The overarching statutory goal of accurately determining dumping margins has been repeatedly emphasized. *See, e.g., Parkdale Int'l v. United States*, 475 F.3d 1375, 1380 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 1063 (2008); *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001); *Lasko Metal Prods., Inc. v. United States*, 43 F.3d 1442, 1446 (Fed. Cir. 1994). A second, and related, principle is expressed by 19 U.S.C. § 1677b(a), under which Commerce is to determine normal value so as to achieve "a fair comparison" between export

price (or constructed export price) and normal value.  19 U.S.C. § 1677b(a); *see Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed. Cir. 1995).  Therefore, when determining constructed value profit under subsections (a)(4) and (e) of 19 U.S.C. § 1677b, and specifically when selecting a "reasonable method" under § 1677b(e)(2)(B)(iii) for determining constructed value profit, Commerce must be guided by the objectives of achieving an accurate margin and a fair comparison between export price and normal value.

The 9.67% constructed value profit rate that Commerce applied to Thai I-Mei resulted in an amended final margin for Thai I-Mei of 5.29%.  *Thai I-Mei I*, 31 CIT ___, 477 F. Supp. 2d at 1338; *Am. Final Determination*, 70 Fed. Reg. at 5146.  That profit rate was based entirely on the profits realized in the Canadian sales by the Rubicon Group and UFP that were not below-cost sales.  As required by the standard of review, the court examines the findings of fact (described by Commerce as "circumstances"), and the reasoning, upon which Commerce concluded that use of only those particular sales of the other respondents was appropriate for Thai I-Mei.

Commerce's reasoning rested in part on its construction of 19 U.S.C. § 1677b(e)(2)(A), which Commerce interpreted as expressing a general preference that constructed value profit be based only upon sales made in the ordinary course of trade.  Remand Redetermination 6.  Commerce concluded that it was reasonable to "mimic" this preference when choosing a "reasonable method" under alternative (iii).  *Id.* at 5-6.  The supporting facts and circumstances Commerce identified in the Remand Redetermination are as follows: (1) that the Rubicon Group, UFP, and Thai I-Mei all were producers and exporters of frozen warmwater shrimp, *i.e.*, the subject merchandise; (2) that all three respondents made sales of frozen warmwater shrimp

during the period of investigation; and (3) that "in calculating [constructed value] for the Rubicon Group and UFP, [Commerce] excluded sales outside the ordinary course of trade" based on verified data pertaining to the sales of those two respondents. *Id.* at 7 (internal citation omitted). Commerce concluded that "[b]ecause these two companies[, the Rubicon Group and UFP,] are contemporaneous Thai producers of subject merchandise, . . . it is reasonable to construct Thai I-Mei's profit rate based upon the experience of those companies." *Id.* Commerce added that "[i]t is reasonable to extrapolate from their experience when constructing a profit rate for Thai I-Mei." *Id.* at 7-8. Commerce further explained that its method enabled the agency to apply a consistent constructed value profit calculation methodology to all three investigated respondents. *Id.* at 9.

The central question the Remand Redetermination presents is whether it actually was reasonable for Commerce to base Thai I-Mei's constructed value profit on an extrapolation from the other respondents' ordinary-course sales in Canada. The court considers this question in the context of the construction of the statute the Department advances in the Remand Redetermination, the factual circumstances Commerce identified, and Commerce's stated objective of achieving consistency among the three respondents.

A. The Remand Redetermination Relies on a Construction of the Statute that Is Not Reasonable

As did the Amended Final Determination, the Remand Redetermination concludes that it was reasonable to exclude from Thai I-Mei's constructed value profit rate calculation the data on the other respondents' non-ordinary-course sales. *See id.* at 1-2. Unlike the Amended Final Determination, the Remand Redetermination based this conclusion on a statutory construction of 19 U.S.C. § 1677b(e)(2)(A) that Commerce considered relevant to the choice of a reasonable

method under clause (iii) of 19 U.S.C. § 1677b(e)(2)(b) (*i.e.*, alternative (iii)). *Id.* at 5-6.

Specifically, Commerce concluded in the Remand Redetermination that "through the preferred

method in [19 U.S.C. § 1677b(e)(2)(A)], Congress expressed its preference that [constructed

value] profit be based upon sales made in the ordinary course of trade" and that it therefore was

reasonable for Commerce to exclude the below-cost sales when exercising its authority under

alternative (iii). *Id.* at 6.

Deference is owed to a decision that an agency bases on its construction of a statute that

it is administering. *See Chevron*, 467 U.S. at 842-43; *see also Pesquera Mares Australes Ltda.*

*v. United States*, 266 F.3d 1372, 1382 (Fed. Cir. 2001) (holding that "statutory interpretations

articulated by Commerce during its antidumping proceedings are entitled to judicial deference

under *Chevron*."). Under *Chevron*, the court first considers whether Congress has spoken

directly to the precise question at issue. *Chevron*, 467 U.S. at 842.

Because 19 U.S.C. § 1677b(e)(2)(A) does not apply in the situation presented by this

case, it cannot reasonably be construed to address the precise question at issue. Clause (iii) of

19 U.S.C. § 1677b(e)(2)(B) does not expressly authorize Commerce to exclude sales outside the

ordinary course of trade when calculating a respondent's constructed value profit rate. Nor does

it expressly prohibit Commerce from doing so. When determining constructed value profit

according to § 1677b(e)(2)(B)(iii), Commerce must use a "reasonable method." 19 U.S.C.

§ 1677b(e)(2)(B)(iii). The only express limitation in alternative (iii) on what constitutes a

reasonable method is that the determined profit must be "capped," *i.e.*, it cannot exceed "the

amount normally realized by exporters or producers . . . in connection with the sale, for

consumption in the foreign country, of merchandise that is in the same general category of

products as the subject merchandise . . . ."[2]  *Id*.  The text of alternative (iii) does not reveal an

intention to limit the discretion of Commerce in other specific ways.  For these reasons, the court

concludes that Congress, in enacting § 1677b(e)(2)(A) and (B)(iii), did not directly address the

precise question at issue.  Therefore, the court next considers whether the agency's construction

of the statute is reasonable.  *Chevron*, 467 U.S. at 843.

The current statutory provisions governing the determination of normal value and

constructed value profit resulted from section 224 of the Uruguay Round Agreements Act

("URAA").  Uruguay Round Agreements Act, Pub. L. No. 103-465, § 224, 108 Stat. 4809,

4878-86 (1994).  The URAA implemented the Agreement on Implementation of Article VI of

the General Agreement on Tariffs and Trade 1994 ("Antidumping Agreement").  *See* Agreement

on Implementation of Article VI of the General Agreement on Tariffs and Trade 1994, Apr. 15,

1994, Marrakesh Agreement Establishing the World Trade Org., Annex 1A, Legal

Instruments–Results of the Uruguay Round, 33 I.L.M. 1125, 1141 (1994) ("Antidumping

Agreement"), *reprinted in* John H. Jackson et al., *Legal Problems of Int'l Econ. Relations* 174

(4th ed. Doc. Supp. 2002).  Under 19 U.S.C. § 1677b(b)(1) as enacted by section 224 of the

URAA, Commerce, when determining normal value, may disregard below-cost sales of the

foreign like product that were made "within an extended period of time in substantial quantities"

and that "were not at prices which permit recovery of all costs within a reasonable period of

---

[2] Although Commerce, in this investigation, did not adequately discharge its statutory
responsibility to attempt to calculate a profit cap as required by alternative (iii), plaintiff failed to
exhaust its administrative remedies with respect to that aspect of the Amended Final
Determination.  *Thai I-Mei I*, 31 CIT at ___, 477 F. Supp. 2d at 1352-55.  Due to this failure,
plaintiff could not challenge in *Thai I-Mei I* the inaction by Commerce and, accordingly, could
not avail itself of the protection of the profit cap.  *Id*.

time . . . ." 19 U.S.C. § 1677b(b)(1). "Whenever such sales are disregarded, normal value shall be based on the remaining sales of the foreign like product in the ordinary course of trade." *Id.* In the investigation, Commerce exercised its authority under § 1677b(b)(1) to exclude the below-cost sales of foreign like products in Canada by the Rubicon Group and UFP and determined the normal value of the comparable subject merchandise according to the sales that occurred in the ordinary course of trade. *Prelim. Determination*, 69 Fed. Reg. at 47,108. Commerce used a weighted average of the profits that the Rubicon Group and UFP realized in these "ordinary course" sales in Canada as the basis for calculating Thai I-Mei's constructed value profit rate. *Id.* at 47,108-09.

The Statement of Administrative Action ("SAA") accompanying the URAA explains that section 224 of the URAA was intended "to implement the provisions of the [Antidumping] Agreement regarding constructed value and the calculation of amounts for profits and selling, general, and administrative expenses (SG&A)." *SAA*, H.R. Doc. No. 103-316, at 839, *reprinted in* 1994 U.S.C.C.A.N. at 4175. For the profit component of constructed value, the statute as amended by the URAA requires generally that Commerce determine profit according to 19 U.S.C. § 1677b(e)(2)(A), which in pertinent part provides that selling, general and administrative expenses, and profit, be "the actual amounts incurred and realized by the specific exporter or producer being examined in the investigation . . . in connection with the production and sale of a foreign like product, in the ordinary course of trade, for consumption in the foreign country . . . ." 19 U.S.C. § 1677b(e)(2)(A).

Because Thai I-Mei had no viable comparison market for the sale of any foreign like product, constructed value was the only available means for determining the normal value of the

subject merchandise Thai I-Mei sold in the United States.  Moreover, Commerce had no data from which to determine constructed value profit under § 1677b(e)(2)(A).  For Thai I-Mei, the Remand Redetermination found, with respect to the determination of profit according to § 1677b(e)(2)(A), that "actual amounts incurred [*sic*] by the respondent are not available." Remand Redetermination 5.  As stated by defendant in responding to plaintiff's comments on the Remand Redetermination, "Thai I-Mei had no comparison market sales . . . ."  Def.'s Resp. 5. Commerce therefore could determine constructed value profit for Thai I-Mei only according to § 1677b(e)(2)(B).  As stated previously in the background section of this Opinion and Order, alternative (i) of § 1677b(e)(2)(B) was unavailable because Thai I-Mei did not have home market sales of products in the same general category of products as the subject merchandise, and alternative (ii) was unavailable because the other respondents lacked viable home markets for sales of foreign like products. 19 U.S.C. § 1677b(e)(2)(B)(i)-(ii).  Therefore, Commerce could determine constructed value profit for Thai I-Mei only according to alternative (iii).

The statutory construction adopted by the Remand Redetermination finds in § 1677b(e)(2)(A) a general preference for the exclusion of below-cost sales that it considers applicable to § 1677b(e)(2)(B)(iii).  The court quotes below language in the Remand Redetermination in which Commerce, first, construes § 1677b(e)(2)(A) to contain this general preference and, second, relies on the general preference it has found in choosing a method under alternative (iii):

> As an initial matter, we note that, because there is a statutorily-preferred method for calculating [constructed value] profit (*i.e.*, [19 U.S.C. § 1677b(e)(2)(A)]), the Department can only choose an alternative method when, as in this case, actual amounts incurred by the respondent are not available.  Thus, in considering what constituted a reasonable method under alternative (iii), the Department looked to a methodology that mimics the preferred method which

> includes only those sales made in the ordinary course of trade. . . . When we cannot apply the preferred method and must rely upon one of the alternative methods, it is reasonable to attempt to mimic Congress's expressed preference that sales outside the ordinary course of trade be excluded. In the present case, the Department had data available from the other respondents which permitted it to calculate Thai I-Mei's profit rate in a manner consistent with the preferred method.

Remand Redetermination 5-6 (footnote omitted).

The court concludes that the statutory construction adopted by the Remand Redetermination is not a reasonable one. The Department's construction lacks support in the language of the statute and blurs the distinction between the separate purposes underlying § 1677b(e)(2)(A) and § 1677b(e)(2)(B).

In concluding that "it is reasonable to attempt to mimic Congress's expressed preference that sales outside the ordinary course of trade be excluded," the Department, in effect, construed § 1677b(e)(2)(A) to signify a general congressional preference for excluding non-ordinary-course sales when constructed value profit is determined, even if constructed value profit is determined under § 1677b(e)(2)(B). *Id.* at 6. However, in enacting § 1677b(e)(2)(A), Congress did not express such a general preference. The section establishes a method for determining constructed value profit solely according to profits that the foreign producer or exporter (*i.e.*, the respondent) being examined realized in its sale of the foreign like product in the home market in the ordinary course of trade. *See* 19 U.S.C. § 1677b(e)(2)(A). The Department's theory that a general congressional preference for excluding non-ordinary-course sales exists in § 1677b(e)(2)(A) separates the principle of determining constructed value profit according to the ordinary-course sale of the foreign like product from the principle that the sale or sales used must be those of the respondent being examined. In the language it chose for § 1677b(e)(2)(A),

Congress expressed the two principles together. *See id.* Commerce's construction reads the "ordinary course" language of § 1677b(e)(2)(A) in isolation rather than in the proper context.

The Department's statutory construction appears to overlook that § 1677b(e)(2)(A) and § 1677b(e)(2)(B) address different situations. Section 1677b(e)(2)(A) applies only in the situation just described, *i.e.*, where the necessary data exist for the respondent under examination. *Id.* In contrast, § 1677b(e)(2)(B) applies only where those "actual data are *not available*" for the respondent under examination. *Id.* at § 1677b(e)(2)(B) (emphasis added). Commerce imputes to the Congress a "preference" that would apply generally, *i.e.*, under all circumstances in which it might be possible to exclude below-cost sales of a foreign like product under alternative (iii) of § 1677b(e)(2)(B). It is illogical, however, to glean such intent from § 1677b(e)(2)(A), which can never apply in a situation in which alternative (iii) applies. Commerce nevertheless discerns in § 1677b(e)(2)(A) a general congressional preference that applies even when the sales being used are not those of the respondent being examined, and even when those sales occurred in a comparison market in which the respondent being examined made no sales.

The exclusion of sales outside the ordinary course of trade in § 1677b(e)(2)(A) effectuates the Antidumping Agreement, which in article 2.2.2 states the general rule that constructed value profits "shall be based on actual data pertaining to production and sales in the ordinary course of trade *of the like product by the exporter or producer under investigation*." Antidumping Agreement art. 2.2.2, *reprinted in* Jackson et al., *Legal Problems of Int'l Econ. Relations* at 175 (emphasis added). Section 1677b(e)(2)(A), in implementing article 2.2.2, does not speak to the determination of constructed value profit for a respondent other than the

respondent under examination.  Such a determination instead is addressed by § 1677b(e)(2)(B).

In discussing the implementation of article 2.2.2 of the Antidumping Agreement, the SAA draws

a parallel to the procedure of 19 U.S.C. § 1677b(b)(1), explaining that, when determining

constructed value profit under § 1677b(e)(2)(A), "Commerce may ignore sales that it disregards

as a basis for normal value, such as those disregarded because they are made at below-cost

prices."  *SAA*, H.R. Doc. No. 103-316, at 839, *reprinted in* 1994 U.S.C.C.A.N. at 4175-76.

Whether the determination is of normal value or is of constructed value profit under

§ 1677b(e)(2)(A), the excluded non-ordinary-course sales are those of the respondent under

examination.  The SAA does not discuss extending to § 1677b(e)(2)(B)(iii) the concept of

excluding non-ordinary-course sales.  Commerce's construction of § 1677b(e)(2)(A) expands the

provision well beyond its plain meaning and its intended purpose.  The court, therefore, cannot

agree that it was reasonable under the statute for the Department, when applying alternative (iii),

"to mimic Congress's expressed preference that sales outside the ordinary course of trade be

excluded."  *See* Remand Redetermination 6.  Commerce misreads § 1677b(e)(2)(A) to find a

general congressional "preference" that does not exist there.

        The statutory construction adopted by the Remand Redetermination errs not only in its

conclusions regarding § 1677b(e)(2)(A) but also in failing to give full effect to the language

Congress chose for alternative (iii), which directs that constructed value profit be determined

according to "any other reasonable method."  19 U.S.C. § 1677b(e)(2)(B)(iii).  Under the

Department's construction, any decision by Commerce to exclude all non-ordinary-course sales

when calculating a constructed value profit rate under alternative (iii), regardless of the

particular circumstances, would be presumed to be "reasonable" because it would effectuate the

congressional "preference" that Commerce erroneously reads into the statute. Conversely, any

decision by Commerce to include non-ordinary-course sales in the calculation might be

characterized as unreasonable in disregarding the preference Commerce attributes to the

Congress. In that respect, the statutory construction would curtail substantially the Department's

exercise of its own discretion when making future decisions involving the issue presented by this

case.

Prior to adopting the new statutory construction in this litigation, the Department

established a position recognizing the need to exercise case-by-case discretion when deciding

whether excluding non-ordinary-course sales is reasonable under alternative (iii). *See Preamble*,

62 Fed. Reg. at 27,359 (stating with respect to constructed value profit determined according to

alternative (iii) that "depending on the circumstances and the availability of data, there may be

instances in which the Department would consider it necessary to exclude certain home market

sales that are outside the ordinary course of trade in order to compute a reasonable measure of

profit for [constructed value] . . . ."). In *Thai I-Mei I*, the court, contrasting the position

expressed in the Preamble with the lack of explanation in the decision memorandum for why

Commerce found it "necessary" to exclude below-cost sales, concluded that the decision

memorandum was unsatisfactory in failing to identify circumstances relevant to Thai I-Mei's

constructed value profit. *Thai I-Mei I*, 31 CIT at ___, 477 F. Supp. 2d at 1355-57.

In *Thai I-Mei I*, the court further noted that the decision memorandum accompanying the

Amended Final Determination identified the exclusion of below-cost sales with a vague policy

preference of the Department. *See id.* In the decision memorandum, Commerce stated that

"including only the sales made in the ordinary course of trade is consistent with the

Department's preferred methodology of calculating profit." *Decision Mem*. 46.   In its

opposition brief in the *Thai I-Mei I* phase of this litigation, the United States argued that the

"exclusion of below-cost sales was consistent with the statutory preference for basing profit

upon above-cost sales." *Thai I-Mei I*, 31 CIT at ___, 477 F. Supp. 2d at 1357 (quoting Def.'s

Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. upon the Agency R. 34).   The court rejected this

litigation position as a *post hoc* justification, explaining that the United States raised this

justification for the first time in its opposition brief.  *Id.*   The Remand Redetermination adopts

this same position.   Remand Redetermination 6.   ("[T]hrough the preferred method in

[§ 1677b(e)(2)(A)], Congress expressed its preference that [constructed value] profit be based

upon sales made in the ordinary course of trade.").   In the Remand Redetermination, Commerce

essentially attributes to the Congress the policy preference that it previously described as its

own.

Yet, Congress gave no indication in alternative (iii) of an intent to limit the discretion of

Commerce in the way posited by the Remand Redetermination.   As the court discussed in *Thai

I-Mei I*, the plain meaning and legislative history of alternative (iii) demonstrate that Congress

intended that discretion to be generally broad but limited in three specific ways.  *See Thai

I-Mei I*, 31 CIT ___, 477 F. Supp. 2d at 1344, 1357.   Commerce must use a "reasonable

method," it must explain its reasons for choosing that method, and it must endeavor to calculate

a profit cap where it is possible to do so.  *See id.*   Had Congress disfavored the use of sales

outside the ordinary course of trade in any constructed value profit situation under

alternative (iii) in which it might be possible to use such sales, Congress, which was explicit in

imposing a reasonableness requirement and a profit cap requirement in alternative (iii),

presumably would have provided some indication in alternative (iii) to that effect. The court

finds none.

The three alternatives set forth in clauses (i), (ii), and (iii) of 19 U.S.C. § 1677b(e)(2)(B)

implement articles (i), (ii), and (iii), respectively, of article 2.2.2 of the Antidumping Agreement.

None of the three provisions in the Antidumping Agreement mentions the exclusion of sales that

are not in the ordinary course of trade. Alternatives (i) and (iii) in the statute closely follow the

language of articles 2.2.2(i) and 2.2.2(iii), respectively, of the Antidumping Agreement.

Alternative (ii), however, varies from article 2.2.2(ii) in incorporating language that excludes

sales that are not in the ordinary course.[3] This departure from article 2.2.2(ii) of the

Antidumping Agreement is explained as follows in the SAA:

> With respect to alternative (2), although it relies on the sales experience of other
> companies, this alternative requires the use of sales in the ordinary course of
> trade, *i.e.*, profitable sales. Absent this requirement, if Commerce could not
> calculate profit for a particular foreign producer under the general rule [*i.e.*,
> 19 U.S.C. § 1677b(e)(2)(A)] because *all* of that producer's sales were at below-

---

[3] Article 2.2.2(ii) of the Antidumping Agreement reads as follows:

> (ii) the weighted average of the actual amounts incurred and realized by other
> exporters or producers subject to investigation in respect of production and sales
> of the like product in the domestic market of the country of origin.

Antidumping Agreement art. 2.2.2(ii), *reprinted in* Jackson et al., *Legal Problems of Int'l
Econ. Relations* at 175. Alternative (ii) provides as follows:

> (ii) the weighted average of the actual amounts incurred and realized by exporters
> or producers that are subject to the investigation or review (other than the
> exporter or producer described in clause (i)) for selling, general, and
> administrative expenses, and for profits, in connection with the production and
> sale of a foreign like product, *in the ordinary course of trade*, for consumption in
> the foreign country.

19 U.S.C. § 1677b(e)(2)(B)(ii) (emphasis added).

> cost prices, that producer would benefit perversely from its own unfair pricing, because its profit figure would be based on an average of other producers' profitable *and* unprofitable sales.

*SAA*, H.R. Doc. No. 103-316, at 840, *reprinted in* 1994 U.S.C.C.A.N. at 4176.

The Remand Redetermination does not identify clause (ii) of 19 U.S.C. § 1677b(e)(2)(B) as the source of its claimed congressional preference for the exclusion of sales outside the ordinary course of trade relating to clause (iii) and instead relies only on § 1677b(e)(2)(A). *See* Remand Redetermination. Nevertheless, the court has considered whether alternative (ii) could support a construction of the statute under which there exists a general congressional preference for excluding non-ordinary-course sales when the issue of excluding such sales arises under alternative (iii). For three reasons, the court concludes that alternative (ii), as explicated by the SAA, does not support such a construction. First, alternative (ii) addresses a specific situation, in which a respondent's constructed value profit is determined according to ordinary-course home-market sales of other respondents. Second, the justification set forth in the SAA reveals a specific intent with respect to the exclusion of unprofitable sales in the particular circumstance in which all of a respondent's home-market sales are below-cost sales (a circumstance that is not presented by this case). *See* 19 U.S.C. § 1677b(e)(2)(B)(iii); *see also SAA*, H.R. Doc. No. 103-316, at 840, *reprinted in* 1994 U.S.C.C.A.N. at 4176. This specificity does not support, and instead tends to refute, an inference that Congress indiscriminately intended or preferred the exclusion of non-ordinary-course sales in all other circumstances. Third, the SAA explains that the purpose of the exclusion of sales outside the ordinary course under alternative (ii) is to effectuate the general principle that a respondent should not benefit from its own unfair sales in its home market. *SAA*, H.R. Doc. No. 103-316, at 840, *reprinted in* 1994 U.S.C.C.A.N. at 4176.

The explanation in the SAA mentions that alternative (ii) is limited to the use of ordinary-course sales "although it relies on the sales experience of other companies." *Id.* This language, introduced by the qualifier "although," suggests that exclusion of non-ordinary-course sales of respondents other than the respondent under examination is not a general rule or principle and, because it is contrary to what might be expected, is more in the nature of an exception.

Moreover, alternative (ii) must be considered in the context of the related statutory provisions. The statute gives Commerce the discretion *not* to exclude non-ordinary-course sales of respondents other than the respondent being examined even in a circumstance in which alternative (ii) potentially could be applied on the basis of ordinary-course home-market sales of those other respondents. As the SAA states, "it should be emphasized that, consistent with the Antidumping Agreement, [19 U.S.C. § 1677b(e)(2)(B)] does not establish a hierarchy or preference among these alternative methods." *Id.* "Further, no one approach is necessarily appropriate for use in all cases." *Id.* The principle to be applied is reasonableness, as indicated by the language of alternative (iii). *See* 19 U.S.C. § 1677b(e)(2)(B)(iii) (requiring the use of "any *other reasonable* method" (emphasis added)). This principle is expressly stated in the Antidumping Agreement, which in article 2.2 requires that constructed value include "a *reasonable* amount for administrative, selling and general costs and for profits." Antidumping Agreement art. 2.2, *reprinted in* Jackson et al., *Legal Problems of Int'l Econ. Relations* at 174 (emphasis added). Therefore, if Commerce were calculating a constructed value profit rate for a respondent based on the home-market sales of foreign like products of other respondents, and the respondent under examination were not found to have made unprofitable sales of a foreign like product in its home market, Commerce would not be required by the statute to apply

alternative (ii).  Instead, Commerce could choose to proceed under alternative (iii), exercising its

discretion to include non-ordinary-course sales in the calculation when failing to do so would

result in an unreasonable profit rate.  In summary, alternative (ii) does not support a conclusion

that Congress intended to establish a general rule or preference for the exclusion of non-

ordinary-course sales under alternative (iii).

In support of its conclusion that a congressional preference for excluding

non-ordinary-course sales exists in alternative (iii), the Remand Redetermination attempts to

explain why the text of alternative (iii) does not express such a preference.  The Remand

Redetermination states as follows:

> Just as with alternative (i), there is no way under alternative (iii) to ensure that the
> Department will have the record information to determine which sales of which
> models of the relevant product were made outside the ordinary course of trade in
> all cases.  For this reason, there is no ordinary course of trade language in
> alternative (iii); it would be administratively infeasible to require the Department
> to use only sales in the ordinary course of trade in cases where sufficient record
> information is not available.

Remand Redetermination 5 n.2.  The Remand Redetermination further explains:

> There is no "ordinary course of trade" language in alternative (i) because,
> under that provision, [constructed value] profit is based upon sales of
> merchandise in the same general category of products as the subject
> merchandise.  The Department will not have sale-specific data on
> merchandise in the same general category as the subject merchandise
> because such merchandise is not subject to the investigation or review.
> . . . The same rationale applies to alternative (iii).

*Id.* at 6 n.3.  This rationale, although plausible with respect to alternative (i), is unpersuasive

when extended to alternative (iii).  Commerce correctly notes that alternative (i) is confined to

calculations of profit that are based on a respondent's home-market sales of merchandise in the

same general category as the subject merchandise rather than on the respondent's sales of a

foreign like product. *See* 19 U.S.C. § 1677b(e)(2)(B)(i). As the SAA explains in discussing

alternatives (i) and (iii), "the Administration does not intend that Commerce would engage in an

analysis of whether sales in the same general category are above-cost or otherwise in the

ordinary course of trade." *SAA*, H.R. Doc. No. 103-316, at 841, *reprinted in* 1994

U.S.C.C.A.N. at 4177. Alternative (iii), however, is not confined, as is alternative (i), to

calculations of profit based on home-market sales of merchandise in the same general category

as the subject merchandise. Home market sales of other exporters or producers of products in

the same general category as the subject merchandise are the basis for calculating the profit cap

in alternative (iii), but subject to the limitation of the profit cap, Commerce may use other

respondents' sales of foreign like products, rather than sales of merchandise in a broader general

category, when employing a "reasonable method" under alternative (iii). *See* 19 U.S.C.

§ 1677b(e)(2)(B)(iii). Thus, the reference in the profit cap language of alternative (iii) to

merchandise in the same general category of products as the subject merchandise does not

suffice as an explanation for why Congress did not express in the language of alternative (iii) the

preference Commerce finds to exist. Commerce's explanation for why such language is absent

from alternative (iii) ignores the effect of the "any other reasonable method" language therein.

Additionally, the court sees no reason why Congress, as a technical matter of legislative drafting,

could not have incorporated into alternative (iii) the preference Commerce contemplates, had it

intended to do so.

        For the foregoing reasons, the court rejects the conclusion in the Remand

Redetermination that it was reasonable for Commerce, when choosing a method under

alternative (iii) by which to determine the constructed value profit for Thai I-Mei, to "mimic" the

general preference Commerce found in construing 19 U.S.C. § 1677b(e)(2)(A). Accordingly, the

court proceeds to consider whether the 9.67% constructed value profit rate that the Remand

Redetermination assigned to Thai I-Mei, on the basis of the findings of fact cited therein, was

determined according to a "reasonable method" as required by the statute.

  B.  The Circumstances Cited by the Remand Redetermination Fail to Support a Conclusion that
      Commerce's Method of Determining the Constructed Value Profit Rate Was Reasonable

        The court concludes that the three circumstances identified by the Department in the

Remand Redetermination fail to support a conclusion that the Department's method of

determining constructed value profit for Thai I-Mei was reasonable. Commerce's task was to

estimate, reasonably and fairly, a profit rate that Thai I-Mei would have realized from sales in its

home market. As this Court has observed, "'the goal in calculating [constructed value] profit is

to approximate the home market profit experience.'" *Thai I-Mei I*, 31 CIT at ___, 477

F. Supp. 2d at 1349-50 (quoting *Geum Poong II,* 26 CIT at 327, 193 F. Supp. 2d at 1370).

Although plaintiff is unable to challenge Commerce's failure to attempt to calculate a profit cap,

Commerce still may not disregard the requirement in alternative (iii) that its method of

estimating be reasonable. An unreasonably high profit estimate will defeat the fundamental

statutory purpose of achieving a fair comparison between normal value and export price. The

court may sustain Commerce's determination only if it is reasonable on the particular findings

Commerce made. The findings relied upon by the Remand Redetermination fall short of this

standard.

        Two of the three circumstances listed in the Remand Redetermination, *i.e.*, that Thai

I-Mei, like the other two respondents, produced and exported subject merchandise and made

sales of subject merchandise during the period of investigation, indicate little more than the basis

under which Thai I-Mei and the other two entities served as respondents in the investigation. *See* Remand Redetermination 7. Additionally, these two circumstances relate to Thai I-Mei's production and sale of subject merchandise in the United States. While thus pertaining directly to the concept of export price, circumstances (1) and (2) indicate little that is of importance with respect to the determination at issue in this judicial proceeding, which was a determination of the *normal value* of Thai I-Mei's merchandise according to the statutorily-prescribed constructed value method.

The third cited circumstance, that Commerce, when calculating constructed value profit for the Rubicon Group and UFP, excluded sales outside the ordinary course of trade based on verified data pertaining to those respondents, is also unavailing. *Id.* It reveals nothing of significance with respect to Thai I-Mei's estimated profit experience. In the investigation, Commerce separately based the constructed value profit rate calculations for each of the other two respondents on their respective sales of their foreign like products in Canada, excluding the non-ordinary-course sales of each respondent. The circumstances of the other two respondents are in stark contrast with Thai I-Mei's circumstance: Thai I-Mei did not have a viable market in Canada for any foreign like product, and the Remand Redetermination cites to no record evidence establishing that Thai I-Mei made any below-cost sales in any potential comparison market. To the contrary, the record fact as stated by defendant is that "Thai I-Mei had no comparison market sales . . . ." Def.'s Resp. 5. Nor does the Remand Redetermination identify facts or circumstances establishing or indicating that, had Thai I-Mei made sales in its home market or in a third country market, it would have made below-cost sales in substantial quantities (as did the other two respondents, in Canada). Thus, no facts or circumstances cited in the

Remand Redetermination establish a logical relationship between Thai I-Mei's estimated profit experience in its home market (or in any comparison market) and the profit experience of the Rubicon Group and UFP on a group of sales in Canada that Commerce selected from among a larger group of sales because these selected sales were in the ordinary course of trade. In pointing only to the three circumstances identified above, the Remand Redetermination impliedly acknowledges that there is no factual relationship between Thai I-Mei's profit experience and the ordinary-course sales by the Rubicon Group and UFP of foreign like products in Canada. Nor do these circumstances support an inference that whatever factors may have influenced the Rubicon Group and UFP to make below-cost sales in Canada in substantial quantities were somehow universal to all respondents, and therefore relevant in some way to Thai I-Mei's profit situation, rather than unique to the Rubicon Group and UFP in the context of sales in Canada.

Moreover, the results of the investigation lend further support to a conclusion that it was not reasonable to impute to Thai I-Mei's constructed value profit rate the effect of the exclusion of the non-ordinary-course Canadian sales that were made by the Rubicon Group and by UFP. Commerce has not identified data showing that the 9.67% profit rate estimate is reasonably related to Thai I-Mei's profit experience. Thai I-Mei's circumstances, according to Commerce's own findings and determinations, were different from those of each of the other two investigated respondents. This is demonstrated by, *inter alia*, Thai I-Mei's amended final margin of 5.29%, which was considerably lower than those Commerce determined for the companies in the Rubicon Group (5.91%) and for UFP (6.82%). *Am. Final Determination*, 70 Fed. Reg. at 5146; *see also* Pl.'s Comments 10. Thai I-Mei's margin was considerably lower than those of these

other two respondents even though Thai I-Mei's margin was determined on the basis of excluding the other respondents' non-ordinary-course sales from Thai I-Mei's constructed value profit rate calculation. The court fails to see why the way in which the other two respondents priced their sales in Canada, *i.e.*, by making some sales (in substantial quantities) below cost, and others above cost, necessarily should have inflated the dumping margin of a third respondent, Thai I-Mei, which had no relationship to those sales and did not make any sales in Canada (or in any other comparison market). Because it was not grounded in any findings that were meaningful with respect to Thai I-Mei, Commerce's decision to exclude the non-ordinary-course sales from the calculation of Thai I-Mei's constructed value profit rate was arbitrary rather than reasonable.

C.  Commerce's Stated Goal of Consistency Among Different Respondents Is Not a Satisfactory
     Justification for the Constructed Value Profit Rate Assigned to Thai I-Mei

In the Remand Redetermination, Commerce reasoned that using only sales made in the ordinary course of trade for Thai I-Mei's profit calculation was consistent with the constructed value profit methodology used for the other two respondents. *See* Remand Redetermination 8-9. Commerce noted that if the Department were to include the Rubicon Group's and UFP's losses from their below-cost sales in calculating Thai I-Mei's constructed value profit, "this would result in Thai I-Mei's [constructed value] profit rate being less than the [constructed value] profit rates calculated for the Rubicon Group and UFP." *Id.* at 9. Commerce identified what it considered to be similarities among the respondents: all three companies are producers and exporters of subject merchandise, all three made sales during the same period of investigation, and Commerce was using the same data to construct a profit rate for all three respondents. *See id.* Plaintiff argues that, because Thai I-Mei's constructed value profit rate is calculated under a

different statutory provision and in a different manner from the Rubicon Group's and UFP's constructed value profit rates, Commerce's interest in replicating the "preferred methodology" in a consistent manner is inappropriate.  Pl.'s Comments 7-8.

The court does not find the Department's "consistency" rationale convincing.  The stated rationale expressly presumes, as a threshold consideration, that Thai I-Mei's constructed value profit rate should *not* be less than those of the other two respondents.  Such a presumption is entirely unfounded.  Commerce fails to show that it was reasonable to subject Thai I-Mei to a constructed value profit rate derived solely from the ordinary-course sales of the other two respondents in Canada.  As discussed previously, Thai I-Mei's circumstances differed in significant ways from those of the other two respondents, as shown by, *inter alia*, the absence of a finding that Thai I-Mei made any below-cost sales of a foreign like product and the relatively lower margin assigned to Thai I-Mei, even despite the exclusion of the non-ordinary-course sales from the constructed value profit calculation.  Also, while Commerce determined the normal value of all of Thai I-Mei's subject merchandise according to constructed value, Commerce generally determined normal value for sales of subject merchandise by the Rubicon Group and UFP according to 19 U.S.C. § 1677b(a)(1)(C), based on these respondents' respective sales, in the ordinary course of trade, of foreign like products in Canada.  *Prelim. Determination*, 69 Fed. Reg. at 47,106.  For the Rubicon Group and UFP, Commerce used constructed value to determine, under 19 U.S.C. § 1677b(e)(2)(A), normal value only for those sales in the United States for which it found no foreign like product to have been sold in Canada in the ordinary

course of trade.[4]  *Id.* at 47,108.  Discussing Thai I-Mei's objections, Commerce stated in the Remand Redetermination that "the number of sales for which [constructed value] was used in each respondent's margin calculation was not a relevant factor in determining whether to exclude sales outside the ordinary course of trade in calculating Thai I-Mei's [constructed value] profit."  Remand Redetermination 16.

Of the three similarities cited by Commerce–*i.e.*, all three companies are producers and exporters of subject merchandise, all three made sales during the same period of investigation, and Commerce used the same data to construct a profit rate for all three–the first two are superficial.  As discussed previously in this Opinion and Order, these "circumstances" merely recount the obvious bases upon which the three entities–only two of which made sales in Canada–participated as respondents in the investigation.  As also discussed previously, these two circumstances indicate little, if anything, that is relevant to the determination of a constructed value profit rate specifically for Thai I-Mei.  The third purported "similarity" is not a similarity

---

    [4] Commerce determined constructed value profit for certain sales of the Rubicon Group and UFP according to 19 U.S.C. § 1677b(e)(2)(A), based on profits realized on sales in the ordinary course of trade in Canada, even though § 1677b(e)(2)(A) requires constructed value profit to be determined according to the sales of a foreign like product by the examined respondent in the "foreign country."  *See* 19 U.S.C. § 1677b(e)(2)(A); *see* Remand Redetermination 8-9.  Commerce's regulations define the same statutory term, "foreign country," to include a third country for purposes of 19 U.S.C. § 1677b(e)(2)(A) but not for purposes of 19 U.S.C. § 1677b(e)(2)(B).  *See* 19 C.F.R. § 351.405(b) (2003).  In promulgating this regulation, Commerce rejected the objection of commenting parties that Commerce, impermissibly and contrary to established principles of statutory construction, was attempting to adopt inconsistent definitions of the same statutory term as that term appeared in the two subparagraphs of § 1677b(e)(2).  *See Preamble*, 62 Fed. Reg. at 27,358.  The validity of 19 C.F.R. § 351.405(b) is not challenged in this judicial proceeding; however, Commerce points to its constructed value profit calculations for the Rubicon Group and UFP as the basis for its consistency rationale as to its determination of constructed value profit for Thai I-Mei.  *See* Remand Redetermination 8-9.

at all. Commerce determined the normal value of the Rubicon Group's, and of UFP's, sales of subject merchandise according to third-country sales data relevant to each of these respective respondents. With respect to the final margin, each was affected adversely by the exclusion of its own below-cost sales (both with respect to normal value determined according to third-country sales pursuant to 19 U.S.C. § 1677b(a)(1)(C) and, for the sales with no corresponding foreign like product, with respect to constructed value), but neither was affected by the below-cost sales of any other respondent. Of the three respondents, only Thai I-Mei was affected–significantly and adversely–by the below-cost sales of other respondents, which sales occurred in a country in which Thai I-Mei did not make any sales. It was not reasonable, on the specific facts and circumstances identified by Commerce in the investigation and the Remand Redetermination, for Commerce to treat the similarities, superficial as they are, as more significant than the obvious differences.

### III. CONCLUSION

The court concludes that Commerce's method of determining a constructed value profit rate for Thai I-Mei in the Remand Redetermination was not in accordance with law. The Remand Redetermination fails to present a satisfactory explanation of why the method Commerce used to calculate Thai I-Mei's constructed value profit rate, which method was based on only those sales in Canada by the Rubicon Group and UFP that occurred in the ordinary course of trade, was, as required by statute, a "reasonable method." 19 U.S.C. § 1677b(e)(2)(B)(iii). The Remand Redetermination misconstrues § 1677b(e)(2)(A) in finding therein a general preference for the exclusion of the non-ordinary-course sales that extends to § 1677b(e)(2)(B)(iii). Commerce's findings of fact, or "circumstances," do not justify the

exclusion of the non-ordinary-course sales, and Commerce's stated purpose of achieving consistency among the various respondents is not a valid rationale for the exclusion of the non-ordinary-course sales on the findings that Commerce put forth. For these reasons, the Remand Redetermination does not comply with the court's order in *Thai I-Mei I*, 31 CIT at ___, 477 F. Supp. 2d at 1358.

The court is remanding the Remand Redetermination to the Department and is directing that Commerce recalculate Thai I-Mei's constructed value profit rate according to a method that differs from the one used in the Amended Final Determination and Remand Redetermination and that is a "reasonable method" as required by clause (iii) of 19 U.S.C. § 1677b(e)(2)(B). As the court concluded in *Thai I-Mei I*, plaintiff has not established its right to have its constructed value profit rate determined according to data other than the data pertaining to the sales of the other two respondents in Canada. *Id.* at ___, 477 F. Supp. 2d at 1348-52. Therefore, Commerce is not required to use an entirely different set of data when recalculating a constructed value profit rate for Thai I-Mei. However, Commerce, in its discretion, may use other data for this purpose should it conclude that it is reasonable under clause (iii) to do so. Because Commerce, in making the redetermination required by this Opinion and Order according to a reasonable method, may find it necessary to obtain additional data, the court is allowing, but not requiring, Commerce to reopen the administrative record in this proceeding.

## **ORDER**

For the reasons stated in this Opinion and Order, and upon consideration of the Final Results of Redetermination Pursuant to Court Remand (June 11, 2007) ("Remand Redetermination") and all other papers filed and proceedings herein, it is hereby:

**ORDERED** that the Remand Redetermination is hereby remanded to the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department") for redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Commerce shall calculate, and incorporate into a redetermination of the final amended less-than-fair-value determination (the "Amended Final Determination") that is under review in this judicial proceeding, a constructed value profit rate for plaintiff Thai I-Mei that is determined according to a method that differs from the one used in the Remand Redetermination and the Amended Final Determination, that is a "reasonable method" as required by clause (iii) of 19 U.S.C. § 1677b(e)(2)(B), that is in accordance with law, and that complies fully with this Opinion and Order; it is further

**ORDERED** that on remand Commerce shall include an explanation of why its chosen method of recalculating the constructed value profit rate is reasonable and serves the objective of achieving accuracy in the determination of a dumping margin for Thai I-Mei; it is further

**ORDERED** that on remand Commerce shall identify the findings of fact upon which it relies for its recalculation of the constructed value profit rate and shall rely only on findings of fact that are supported by substantial evidence on the record; it is further

**ORDERED** that, in recalculating the constructed value profit rate, Commerce is not required to confine its redetermination to the use of data from the third-country sales of the other respondents but instead may use other data for this purpose should it conclude that it is reasonable under clause (iii) to do so; it is further

**ORDERED** that Commerce may reopen the administrative record in this proceeding but is not required to do so; and it is further

**ORDERED** that Commerce shall submit its redetermination by no later than 120 days from the date of this Opinion and Order.

    /s/ Timothy C. Stanceu         

Timothy C. Stanceu

Judge

Dated: August 26, 2008
       New York, New York