Slip Op. 10-43

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ATAR, S.r.l., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN ITALIAN PASTA COMPANY, DAKOTA GROWERS PASTA COMPANY, AND NEW WORLD PASTA COMPANY, <br><br> Defendant-Intervenors. | Before:  Timothy C. Stanceu, Judge <br><br> Court No. 07-00086 |

## OPINION AND ORDER

[Ordering a second remand on redetermined final results by the United States Department of Commerce in an administrative review of an antidumping duty order on certain pasta from Italy]

Dated: April 20, 2010

*Riggle & Craven* (*David J. Craven*) for plaintiff.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Carrie A. Dunsmore*, *David S. Silverbrand*, *Richard P. Schroeder*, and *Jane C. Dempsey*); *Deborah King,* Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Kelley Drye & Warren LLP* (*David C. Smith, Jr.* and *Paul C. Rosenthal*) for defendant-intervenors.

Stanceu, Judge: In this action, plaintiff Atar S.r.l. ("Atar"), an Italian producer and

exporter of pasta products, contested the final determination ("Final Results") issued by the

International Trade Administration, United States Department of Commerce ("Commerce" or the

"Department"), in the ninth administrative review of an antidumping duty order on certain pasta

from Italy. *Notice of Final Results of the Ninth Admin. Review of the Antidumping Duty Order*

*on Certain Pasta from Italy*, 72 Fed. Reg. 7011 (Feb. 14, 2007) ("*Final Results*"). The court's

June 5, 2009 opinion and order affirmed the Final Results in part and issued a remand order

directing Commerce to redetermine the profit and indirect selling expense ("ISE") components of

the calculation of the constructed value ("CV") of Atar's subject merchandise. *Atar, S.r.l. v.*

*United States*, 33 CIT __, __, 637 F. Supp. 2d 1068, 1092 (2009) ("*Atar I*"). In determining

constructed value profit and indirect selling expense in the Final Results, Commerce used a

weighted average of the sales of the six respondents in the previous (eighth) administrative

review of the order (which did not include Atar) that were made in the ordinary course of trade,

*i.e.*, that were not made below cost. *Issues & Decisions for the Final Results of the Ninth Admin.*

*Review of the Antidumping Duty Order on Certain Pasta from Italy & Determination to Revoke*

*in Part* 14 & n.5, 18-21 (Feb. 5, 2007) ("*Decision Mem.*"). *Atar I* held that Commerce had not

demonstrated the reasonableness of its method of determining constructed value profit and

indirect selling expense and, on remand, must reconsider, *inter alia*, its decision to exclude the

below-cost sales from the profit and indirect selling expense calculations. *Atar I*, 33 CIT at __,

637 F. Supp. 2d at 1092.

Before the court is Commerce's decision upon remand ("Remand Redetermination"),

issued September 3, 2009, in which Commerce calculated Atar's constructed value profit and

indirect selling expense using a weighted average of the sales of two of the six respondents in the

prior review, which Commerce chose because they were the only respondents that earned an

overall profit on their sales subject to that review. Results of Redetermination pursuant to Ct. Remand 6, 8-9 ("Remand Redetermination"). Plaintiff raises various objections to the Remand Redetermination. Comments on First Remand Determination 2-14 ("Pl. Comments"). Concluding that Commerce's method of redetermining constructed value profit was incomplete and contrary to 19 U.S.C. § 1677b(e)(2)(B)(iii) (2006) in failing to adhere to the statutory profit cap requirement, the court again remands the matter to Commerce for corrective action.

## I. BACKGROUND

The background of this case, as set forth in *Atar I*, 33 CIT at __, 637 F. Supp. 2d at 1072-73, is summarized briefly herein and augmented with a discussion of events occurring since the issuance of the court's opinion and order on June 5, 2009.

Commerce published the final results of the ninth administrative review in February 2007, assigning Atar a weighted-average dumping margin of 18.18%. *Final Results*, 72 Fed. Reg. at 7012. The review covered two manufacturer/exporters, one of which was Atar, and pertained to entries of certain non-egg dry pasta[1] (the "subject merchandise") made during the period July 1, 2004 through June 30, 2005 ("period of review" or "POR"). *See Notice of Prelim. Results & Partial Rescission of Antidumping Duty Admin. Review: Ninth Admin. Review of the Antidumping Duty Order on Certain Pasta from Italy*, 71 Fed. Reg. 45,017, 45,018 (Aug. 8, 2006) ("*Prelim. Results*"). In response to the court's Opinion and Order dated June 5, 2009, Commerce's Remand Redetermination, filed September 3, 2009, recalculated the constructed

---

[1] Imports covered by the order "are shipments of certain non-egg dry pasta in packages of five pounds four ounces or less, whether or not enriched or fortified or containing milk or other optional ingredients." *See Notice of Final Results of the Ninth Admin. Review of the Antidumping Duty Order on Certain Pasta from Italy*, 72 Fed. Reg. 7011, 7012 (Feb. 14, 2007) ("*Final Results*").

value profit and indirect selling expense for Atar's subject merchandise and thereby lowered

Atar's margin to 14.45%. Remand Redetermination 15. Plaintiff filed comments on October 5,

2009. Pl. Comments. Defendant and defendant-intervenor filed comments responding to

plaintiff's comments on November 9, 2009. Def.'s Reply to Pl.'s Comments upon the Remand

Redetermination ("Def. Reply"); Reply to Pl.'s Comments on Remand Redetermination Filed on

Behalf of Def.-Intervenors American Italian Pasta Co., New World Pasta Co. & Dakota Growers

Pasta Co. ("Def. Intervenor Reply"). On December 16, 2009, plaintiff moved for leave to file an

additional submission, which motion defendant opposed on December 22, 2009. Mot. for Leave

to File Resp. 1; Opp'n to Pl.'s Mot. to File a Resp. 1.

## II. DISCUSSION

The court exercises jurisdiction over this case according to 28 U.S.C. § 1581(c), under

which the court reviews actions brought under 19 U.S.C. § 1516a, including actions contesting

the final results of an administrative review issued under 19 U.S.C. § 1675(a). 19 U.S.C.

§§ 1516a, 1675(a) (2006); 28 U.S.C. § 1581(c) (2006). Upon review, the court will determine

whether the Remand Redetermination complies with the remand order in *Atar I* and will hold

unlawful any determination, finding, or conclusion found to be unsupported by substantial

evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C.

§ 1516a(b)(1)(B)(i).

As discussed in *Atar I*, the court could not conclude that Commerce, in determining

constructed value profit and indirect selling expense according to a weighted average of the sales

of the six respondents in the eighth review, had employed a "reasonable method" as required by

19 U.S.C. § 1677b(e)(2)(B)(iii) ("alternative (iii)"). *Atar I*, 33 CIT at __, 637 F. Supp. 2d

at 1092. Alternative (iii) authorizes Commerce to determine constructed value selling, general, and administrative expenses, and profits, based on "any other reasonable method" but limits the amount determined for profits according to a "profit cap," under which the amount allowed for profit "may not exceed the amount normally realized by exporters or producers . . . in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise." 19 U.S.C. § 1677b(e)(2)(B)(iii).

The court's remand order directed Commerce to reconsider, and redetermine as necessary, Atar's constructed value profit and indirect selling expense. *Atar I*, 33 CIT at __, 637 F. Supp. 2d at 1092. In response, Commerce on remand has revised Atar's margin by basing constructed value profit and indirect selling expense on the data of two of the six respondents in the eighth review, which Commerce chose because these two respondents were the only respondents in the eighth review to have realized a profit. Remand Redetermination 6, 8-9. In the Remand Redetermination, Commerce cited to a practice of considering unprofitable companies unsuitable for determining constructed value profit. *Id.* at 8 ("A company with zero profit has no profit and accordingly is not an appropriate surrogate for determining a respondent's profit for CV purposes."). Commerce did not exclude the below-cost sales of the two chosen respondents. *Id.* at 15. Commerce used the data of these same two respondents in determining a ratio for constructed value indirect selling expense, reasoning that a company's profit is a function of its indirect selling expense. *Id.* at 9-10.

Commerce chose to use all sales of the two respondents it selected from the eighth review as its way of addressing a problem the court identified in the Department's previous determination of constructed value. That problem identified by the court in *Atar I* was

Commerce's arbitrarily excluding data of sales made outside the ordinary course based only on a generally-applicable "preferred methodology" rather than on a case-by-case decision grounded in circumstances relevant to Atar. *See Atar I*, 33 CIT at __, 637 F. Supp. 2d at 1086-87. The court stated that "[a] default policy or preference under which Commerce inflexibly excludes below-cost sales in all situations such as the one presented here cannot serve as a substitute for determining a 'reasonable method' for purposes of alternative (iii)." *Id.* at __, 637 F. Supp. 2d at 1087.

Atar raises several objections to the Remand Redetermination, including that Commerce should not have excluded the data of the four unprofitable respondents. Pl. Comments 4-7. Atar argues that excluding these data "in essence, establishes a minimum profit requirement, which is not part of the antidumping statute or regulations" and "would also appear to be contrary" to the decision of the Court of International Trade in *Floral Trade Council v. United States*. *Id.* at 5 (citing *Floral Trade Council v. United States*, 23 CIT 20, 30, 41 F. Supp. 2d 319, 329-30 (1999)) (further arguing at page 14 of Pl. Comments that "[t]he rejection of this [*sic*] data essentially establishes a statutory minimum profit contrary to the dictates of the statute, legislative history and judicial precedent."). In arguing against a "minimum profit requirement" as discussed in *Floral Trade Council*, Atar quotes language in *Floral Trade Council* observing that Congress, as indicated in the Statement of Administrative Action ("SAA") accompanying the Uruguay Round Agreements Act, did not intend that Commerce, when determining a profit cap, would analyze whether sales in the same general category as the subject merchandise are above-cost or otherwise in the ordinary course of trade. Pl. Comments 5 (quoting *Floral Trade Council*, 23 CIT at 30, 41 F. Supp. 2d at 329-30 (quoting *The Uruguay Round Agreements Act, Statement*

*of Administrative Action*, H.R. Doc. No. 103-316 (Vol. 1), at 839, 841 (1994), *reprinted in* 1994

U.S.C.C.A.N. 4040, 4175, 4177 ("*SAA*"))).

In *Floral Trade Council*, the Court of International Trade rejected Commerce's

determination of constructed value profit under alternative (iii), concluding that alternative (iii)

"does not mandate the creation of a positive amount where all available evidence indicate[s] non-

profitable sales." 23 CIT at 33, 41 F. Supp. 2d at 332. This case is not analogous in all respects

to *Floral Trade Council*, which resulted from a profit cap of zero profit that was based on record

data on home market sales of flowers that were in the same general category as the subject

merchandise. *See id.* Nevertheless, in this case, as in *Floral Trade Council*, the record data

pertaining to the home market include a significant level of non-profitable selling activity.

Plaintiff's reliance on *Floral Trade Council* is warranted because here, as in that case, Commerce

is determining constructed value profit under alternative (iii), which imposes the profit cap as an

express limitation on Commerce's determination of constructed value profit.

In the ordinary circumstance, the statute requires Commerce to determine a profit cap that

places a ceiling on constructed value profits, regardless of what "reasonable method" Commerce

chooses to apply. *See* 19 U.S.C. § 1677b(e)(2)(B)(iii). Unlike the method used to determine

selling, general, and administrative expenses, which is governed by a reasonableness

requirement, the method used to determine profits must be reasonable *and* be subjected to the

profit cap provision. *See id.* The SAA contemplated that Commerce might have to apply

alternative (iii) on the basis of the facts otherwise available, due to the absence of record data

from which to calculate the profit normally realized by other companies on sales of the same

general category of products. *See SAA* at 841, *reprinted in* 1994 U.S.C.C.A.N. at 4177;

19 U.S.C. § 1677e(a) (2006).  But even the exception for absence of record data does not allow

Commerce to ignore the profit cap requirement entirely when determining constructed value

profit.  Where the record lacks data on profit normally realized by other companies on sales of

the same general category of products, Commerce still must attempt to comply with the profit

cap requirement through the use of facts otherwise available.  *See SAA* at 841, *reprinted in* 1994

U.S.C.C.A.N. at 4177; *Geum Poong Corp. v. United States*, 25 CIT 1089, 1096-97, 163 F. Supp.

2d 669, 678-79 (2001).  In the Remand Redetermination, Commerce acknowledged that

alternative (iii) imposes the profit cap as a limitation on its determination of CV profits but

neither identified a profit cap nor made a finding that available data did not allow it to do so.[2]

*See* Remand Redetermination 4.  Nor is there any discussion in the Remand Redetermination of a

profit cap calculated according to facts otherwise available.  *See id.*

Although Commerce did not determine a profit cap in the Remand Redetermination, it

stated in the Preliminary Results that the data it used to determine constructed value profit based

on the weighted average of ordinary-course sales of all respondents in the eighth review also

serve as the profit cap.  *See Prelim. Results*, 71 Fed. Reg. at 45,022 ("As such, in accordance

with [19 U.S.C. § 1677b(e)(2)(B)(iii)], the weighted-average profit rate of the respondents in the

---

[2] The Remand Redetermination expressly acknowledges that

> [t]he third alternative allows the Department to use any reasonable method *as long
> as the amount applied for profit is not greater than the amount normally realized
> by exporters or producers "in connection with the sale, for consumption in the
> foreign country, of merchandise that is in the same general category of products
> as the subject merchandise."*

Results of Redetermination pursuant to Ct. Remand 4 (quoting 19 U.S.C. § 1677b(e)(2)(B)(iii))
(emphasis added) ("Remand Redetermination").  The Remand Redetermination contains no
discussion of whether or how the profit cap obligation affected the constructed value profit
determination contained in the decision.  *See id.*

*Pasta Eighth Review Final Results* establishes a profit cap."); *Atar I*, 33 CIT at ___, 637 F. Supp.

2d at 1088-89.  Commerce did not indicate in the Remand Redetermination that it was relying

upon the profit cap described in the Preliminary Results.  *See* Remand Redetermination.  Because

the court in *Atar I* held that Commerce's overall method of determining constructed value profit

was not a "reasonable method" under alternative (iii), the court did not reach the question of

whether the profit cap Commerce identified in the Preliminary Results was lawful.  *See Atar I*,

33 CIT at ___, 637 F. Supp. 2d at 1088-89; *see Geum Poong*, 25 CIT at 1096-97, 163 F. Supp. 2d

at 678-79.  Because the court decided *Atar I* on another ground, *i.e.*, that use of a reasonable

method had not been shown, *Atar I* cannot be construed to mean that Commerce could issue a

decision on remand that fails to adhere to the statutory profit cap requirement.

Without deciding the issue, *Atar I* questioned whether the data used to calculate

constructed value profit also could serve as a valid profit cap, but the case neither allowed nor

disallowed this profit cap.  *Atar I*, 33 CIT at ___, 637 F. Supp. 2d at 1088-89.  The court

recognizes that there may be instances, due to the lack of data on the record, in which the profit

cap determination, or facts available profit cap determination, and the constructed value profit

determination might be based on the same data.  Although the court is not required to address

whether, upon a second remand, Commerce could decide to adopt the profit cap described in the

Preliminary Results, the court observes that the requirements of the statute would not allow it to

sustain such a decision.  As suggested by the language of alternative (iii) and confirmed by the

SAA, Congress did not intend for Commerce to exclude data on below-cost sales from its

calculation when determining a profit cap.  *See* 19 U.S.C. § 1677b(e)(2)(B)(iii); *SAA* at 841,

*reprinted in* 1994 U.S.C.C.A.N. at 4177 ("Likewise, the Administration does not intend that

Commerce would engage in an analysis of whether sales in the same general category are above-cost or otherwise in the ordinary course of trade."). The Court of International Trade emphasized this point in *Floral Trade Council*, 23 CIT at 29-31, 41 F. Supp. 2d at 329-30.

Defendant comments that Atar's reliance on *Floral Trade Council* is misplaced, arguing that the case before the court is distinguishable because the record here, unlike that in *Floral Trade Council*, includes profitable sales. Def. Reply 6-7. According to defendant, *Floral Trade Council* "recognized that the statute normally required a positive profit value under 19 U.S.C. § 1677b(e)(2)(B)(iii), [*i.e.*, alternative (iii),] but carved a presumptive and narrow exception to this positive profit requirement 'where the record indicates that profitable sales do not exist.'" *Id.* at 7 (quoting *Floral Trade Council*, 23 CIT at 32, 41 F. Supp. 2d at 331). Defendant-intervenor makes a similar argument. Def.-Intervenor Reply 5. These arguments overlook the basic problem posed by the Remand Redetermination, which is that Commerce failed to comply with the profit cap provision, which formed the basis for the holding in *Floral Trade Council*. This problem arises because Commerce failed to adhere to a statutory requirement and thus would exist even were the court to accept defendant's strained reading of *Floral Trade Council*. Moreover, even had the Remand Redetermination expressly adopted the profit cap described in the Preliminary Results (which the Remand Redetermination did not do), such an action would have contravened the congressional intent that a profit cap not be based on a selective database that excludes below-cost sales of "same general category" products that occurred in the home market. *See SAA* at 841, *reprinted in* 1994 U.S.C.C.A.N. at 4177.

Although arguing that the Remand Redetermination unlawfully applies a "minimum profit requirement" that is contrary to the holding in *Floral Trade Council*, 23 CIT at 31, 33,

41 F. Supp. 2d at 330-32, plaintiff's comments do not raise expressly the objection that

Commerce, in the Remand Redetermination, failed to attempt to determine a profit "cap." *See*

Pl. Comments. It can be argued, therefore, that plaintiff has waived any such objection. The

court might be within its discretion were it to decide, based on a waiver theory, that Commerce

need not comply with the profit cap requirement on remand, but the court declines to take such

an approach. By basing its objection to Commerce's applying a minimum profit requirement on

*Floral Trade Council*, plaintiff impliedly relies on the reasoning of that case, under which a

profit cap of zero profit was the justification for the holding that a minimum profit requirement is

inconsistent with alternative (iii). Pl. Comments 5; *Floral Trade Council*, 23 CIT at 30, 41 F.

Supp. 2d at 329-30. It is noteworthy also that plaintiff's comments quote language from *Floral

Trade Council* discussing the profit cap requirement. Pl. Comments 5 (quoting *Floral Trade

Council*, 23 CIT at 30, 41 F. Supp. 2d at 329-30). Here, considering the full implications of

plaintiff's *Floral Trade Council* argument requires the court to consider the profit cap provision

of alternative (iii) as an entirety. Congress intended Commerce to comply with that provision

even if Commerce must do so using facts otherwise available, *see SAA* at 841, *reprinted in* 1994

U.S.C.C.A.N. at 4177, and *Geum Poong*, 25 CIT at 1097, 163 F. Supp. 2d at 679, and the court

will not overlook this requirement in the circumstances of this case. Even had Atar failed to

allude to the profit cap requirement in any respect (which does not describe the circumstance

here), "a court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute

before it, even an issue the parties fail to identify and brief." *U.S. Nat'l Bank of Or. v. Indep. Ins.

Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (quoting *Arcadia v. Ohio Power Co.*,

498 U.S. 73, 77 (1990)); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)

("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

A second question is whether the court should disregard the profit cap issue based on an exhaustion theory. It appears from the record that Atar did not raise expressly the profit cap issue during the ninth review. The court is to exercise discretion to determine whether requiring exhaustion of administrative remedies is appropriate. 28 U.S.C. § 2637(d) (2006) (stating that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."). Courts have recognized an exception to the requirement to exhaust administrative remedies where a pure question of law is involved. *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007). The narrow issue of whether Commerce, in all cases in which it applies alternative (iii), must endeavor to comply with the profit cap requirement is a pure question of law. Commerce is subject to this obligation whenever it applies alternative (iii), regardless of the particular facts before it. The issue of whether Commerce is ever free to apply alternative (iii) absent an attempt to comply with the profit cap obligation may be resolved by "statutory construction alone." *See id.* (quoting *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003) (internal quotation marks and brackets omitted)). In addition, Commerce having revealed in the Remand Redetermination its awareness that its profit calculation on remand is subject to the profit cap provision, it is not appropriate in these circumstances for the court to overlook the Department's failure to comply with that provision. *See* Remand Redetermination 4. The doctrine of exhaustion of administrative remedies, for these reasons, does not preclude the court from requiring that Commerce, on a

second remand, effectuate the statutory profit cap requirement in this case in accordance with alternative (iii). *See* 19 U.S.C. § 1677b(e)(2)(B)(iii).

In summary, the statute directs Commerce to determine constructed value profit according to a method that satisfies both the reasonable method requirement and the profit cap requirement as embodied in alternative (iii). Because the Remand Redetermination is contrary to the statute in disregarding the profit cap requirement, a further remand is required in this proceeding. In solving the profit cap problem presented by this case, Commerce should take heed of the congressional intent, recognized in the SAA, that Commerce not exclude data on below-cost sales from the database used to calculate a profit cap. *See SAA* at 841, *reprinted in* 1994 U.S.C.C.A.N. at 4177.

Atar raises various other objections in its comments on the Remand Redetermination. *See* Pl. Comments 4-14. The court has considered these objections, and the comments of the other two parties thereon, but does not perceive a need to rule on these other objections because it would be premature to do so as these objections may be moot once Commerce has submitted its decision in response to this Opinion and Order. Below, the court discusses its specific reasons for declining to rule on each of the other objections set forth in plaintiff's comments.

Atar objects to Commerce's limiting its profit and indirect selling expense determinations to the two eighth review respondents on the ground that Commerce considered the use of data of all six respondents to be acceptable in the Final Results. Pl. Comments 4-5. Atar argues that, nothing having changed as to the record, it was arbitrary and capricious for Commerce to limit the number of respondents whose data is considered. *Id.* at 4. The court does not reach this issue

with respect to the determination of constructed value profit, which the court rejects on other grounds.[3]

Atar objects, further, that even if it was appropriate to exclude the data of the profitless eighth review respondents from the constructed value profit calculation, Commerce erred in excluding these data from the constructed value determination of indirect selling expense. Pl. Comments 6-7. Atar's rationale is that if a company fails to realize a profit, "either the expenses of the company are too high or the selling prices are too low," *id.*, and "[i]n either case, using the ISE ratio . . . would, as a result, be adverse to the respondent." *Id.* at 7. Plaintiff adds that "[i]f either the expenses were lower or the selling price were higher, which would be the case with a higher profit[,] [t]he resultant ISE ratio would, in fact be lower." *Id.* Plaintiff further adds that "if there is any distortion, it would be adverse to Atar." *Id.*

In the Remand Redetermination, Commerce reasoned that because a company's profit is a function of its total expenses, "it would be inconsistent and possibly distortive . . . to calculate a profit ratio based only on companies reporting a profit" while calculating indirect selling expense based on all companies' data. Remand Redetermination 10. The court is requiring Commerce to redetermine constructed value profit in a way that adheres both to the profit cap requirement and the reasonable method requirement as stated in alternative (iii). The relationship between the two constructed value determinations that are addressed in alternative (iii) was alluded to by Commerce in the Remand Redetermination. *See id.* It is possible, if not likely, that on remand Commerce will change its determination of constructed value indirect selling expense. The court

---

[3] With respect to indirect selling expense, the court is reserving decision, for reasons discussed *infra*.

will review Commerce's second remand redetermination to ensure that both the profit and indirect selling expense ratios, as Commerce may describe and explain them therein, comply with 19 U.S.C. § 1677b(e)(2)(B)(iii). The court reserves any ruling on the constructed value indirect selling expense that Commerce applied to Atar in the Remand Redetermination.

Atar also objects that Commerce erred in determining constructed value profit and indirect selling expense by calculating quantity-based weighted averages, and not simple averages, from the data of the two eighth review respondents. Pl. Comments 7-10. Atar maintains that it is Commerce's normal practice to use a simple average when combining data "unless the facts warrant deviation from that practice," *id.* at 7, and that Commerce's stated reasons for using a weighted average do not warrant a departure. *Id.* at 7-9 (citing *Rhodia, Inc. v. United States*, 26 CIT 1107, 1111, 240 F. Supp. 2d 1247, 1251 (2002)). The practice to which plaintiff refers, which was discussed in the opinion in *Rhodia*, issued in 2002, is apparently no longer a practice. As the Remand Redetermination and defendant's comments mention, Commerce used a weighted average to determine constructed value profit in the antidumping investigation resulting in *Thai I-Mei Frozen Foods Co., Ltd. v. United States*, 33 CIT __, Slip. Op. 09-65, at 5 (June 24, 2009) ("*Thai I-Mei IV*"), which Commerce conducted in 2004-2005, and used this methodology again following the court's remand order in that case. *See* Remand Redetermination 13; Def. Reply 8; *Thai I-Mei Frozen Foods Co., Ltd. v. United States*, 31 CIT 334, 336-37, 339, 477 F. Supp. 2d 1332, 1335-36, 1338 (2007) ("*Thai I-Mei I*"); *see also Thai I-Mei Frozen Foods Co., Ltd. v. United States*, 33 CIT __, Slip. Op. 09-6 (Jan. 21, 2009) ("*Thai I-Mei III*"); *Thai I-Mei Frozen Foods Co., Ltd. v. United States*, 32 CIT __, 572 F. Supp. 2d 1353 (2008) ("*Thai I-Mei II*").

In support of Commerce's choice to use a weighted average of the data, the Remand Redetermination states that a simple average of the data of the two chosen respondents could risk the disclosure of those respondents' proprietary information. Remand Redetermination 12-13. Atar disagrees that such a risk exists. Pl. Comments 8-9. In further support of its argument, Atar contends that use of a weighted average distorts results, in particular where Commerce averages data from a producer larger than the producer being examined to determine constructed value profit and indirect selling expense. *Id.* at 9-10.

There may be individual circumstances in which Atar's position that a simple average produces a more reasonable result than a weighted average is correct, but the court declines to hold that methods of determining constructed value profit and indirect selling expense employing weighted averages are impermissible *per se*. Because alternative (iii) imposes a general requirement that any methods used under alternative (iii) be reasonable, any such inflexible rule would be inconsistent with the measure of discretion Congress granted. Therefore, questions such as whether a straight or weighted average is more appropriate must be considered on a case-by-case basis. Upon receipt of the second remand results ordered herein, the court will consider the issue of the overall reasonableness of the method Commerce uses to determine profit and indirect selling expense ratios as components of the constructed value of Atar's subject merchandise. If appropriate in the context of the decision Commerce puts forth, the court's review will include the issue of whether that method was reasonable in the choice of an averaging method.

Plaintiff's final objection is that Commerce erred in the Remand Redetermination by failing to consider Atar's earlier argument that the eighth review respondents Commerce chose as

surrogates are not representative of Atar, even though the court invited Commerce to consider this argument in ordering the first remand. Pl. Comments 10-14; *see Atar I*, 33 CIT at __, 637 F. Supp. 2d at 1089. Plaintiff renews this objection with respect to Commerce's choice of the two respondents in the Remand Redetermination. Pl. Comments 10-14.

The exclusion of the data of four of the six respondents in the eighth review stemmed from Commerce's stated preference for using as a surrogate only the data of profitable respondents. Remand Redetermination 6, 8-9. Because the court concludes that Commerce must resolve the profit cap issue, the court need not, and does not, decide whether Commerce's stated preference constitutes a reasonable method under alternative (iii) in the particular context of this case, where a respondent had no home market sales and no acceptable comparison market and where Commerce concluded that, because of the need to protect proprietary information, it could not base its determinations on the home market sales data of the other respondent in the review. The court is compelled to point out, nevertheless, that part of Commerce's rationale for applying that preference in the Remand Redetermination, the decision of the Court of International Trade in *Rhodia*, 26 CIT at 1114-15, 240 F. Supp. 2d at 1254-55, is not binding precedent and, equally important, is inapposite. Remand Redetermination 6 & n.2. *Rhodia* involved profit determined according to the non-market economy provisions in the statute, 19 U.S.C. § 1677b(c)(1), not profit determined according to alternative (iii), which is subject to different considerations, including the profit cap limitation. *See Rhodia*, 26 CIT at 1108, 1113-15, 240 F. Supp. 2d at 1248, 1253-55. The dicta in *Rhodia* referencing the determination of profit in a market economy antidumping proceeding does not address the particular circumstances of a respondent such as Atar. *See id.*

The court also points out that a factor weighing against Commerce's preference in this case is the limiting effect on the database that this preference caused. By excluding the data on four of the six respondents, Commerce determined constructed value profit and indirect selling expense according to a database that necessarily was less representative of the home market situation considered as a whole than a database consisting of all available data on the home market sales of all eighth review respondents. Examination of that narrowed database reveals that on remand Atar's profit and indirect selling expense, as a consequence of the use of a weighted average, were determined principally according to the data of the larger of the two chosen respondents. That respondent's profit ratio was substantially greater than the profit ratio of the only other respondent that realized a profit. *See* Pl. Comments 9-10. In addition, because this smaller respondent accounted for a very small percentage of the combined sales quantities of the two chosen respondents, the data pertaining to it had little effect on the resulting profit and indirect selling expense ratios. Based on record evidence, Atar objects that the larger respondent, due to size and other factors, is not representative of a company such as Atar. *Id.* at 9-14.

Atar's objections concerning the unsuitability of the larger of the two chosen eighth review respondents may have merit. As it concludes with respect to other objections lodged by Atar, the court considers it premature and unnecessary to rule on these objections at this time. Commerce, on remand, must redetermine constructed value profit and, in the process, likely will redetermine constructed value indirect selling expense as well. In fashioning a second set of remand results in this case, Commerce should give due consideration to the representativeness of the data of any eighth review respondents it chooses as surrogates, the more so because those data will have a substantial effect on Atar's margin. In doing so, Commerce must be mindful of

its obligation to achieve a fair and accurate result that complies fully with the obligations imposed by alternative (iii) and related statutory provisions.

### III. CONCLUSION

The Remand Redetermination is not in accordance with law because of Commerce's failure to comply with the profit cap requirement as set forth in 19 U.S.C. § 1677b(e)(2)(B)(iii). In a second remand proceeding, Commerce must reconsider the matter and redetermine constructed value profit for Atar in a way that satisfies both the profit cap and reasonable method requirements of that provision of the statute. Commerce may redetermine the constructed value indirect selling expense at that time.

### ORDER

Upon review of the Results of Redetermination pursuant to Court Remand ("Remand Redetermination"), the parties' comments, and all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the Remand Redetermination, as filed on September 3, 2009, be, and hereby is, set aside as contrary to law; it is further

**ORDERED** that Commerce will submit to the court a second remand redetermination that complies with 19 U.S.C. § 1677b(e)(2)(B)(iii), and related statutory provisions, in all respects and that is in accordance with all directives and conclusions set forth in this Opinion and Order; it is further

**ORDERED** that Commerce shall submit its second remand redetermination within sixty (60) days of the date of this Opinion and Order; it is further

**ORDERED** that plaintiff may submit to the court comments on the second remand redetermination within thirty (30) days of the date on which the second remand redetermination is filed with the court; it is further

**ORDERED** that defendant and defendant-intevenor may submit comments on the second remand redetermination, and on plaintiff's comments thereon, within twenty (20) days of the date on which plaintiff files its comments with the court; and it is further

**ORDERED** that plaintiff's Motion for Leave to File Response to the comments of defendant and defendant-intervenor on the Remand Redetermination, filed December 16, 2009 be, and hereby is, denied because the argument plaintiff makes in support of that motion, which pertains to dispositive motions, lacks merit when viewed in the context of the court's review of the Remand Redetermination.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: April 20, 2010
          New York, New York