Slip Op. 12- 101

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ATAR S.R.L., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN ITALIAN PASTA COMPANY, DAKOTA GROWERS PASTA COMPANY, and NEW WORLD PASTA COMPANY, <br><br> Defendant-intervenors. | Before: Timothy C. Stanceu, Judge <br><br> Court No. 07-00086 |

## OPINION

[Affirming a remand redetermination in an administrative review of an antidumping duty order on certain pasta from Italy]

Date: July 31, 2012

*David J. Craven*, Riggle & Craven, of Chicago, IL, for plaintiff.

*Jane C. Dempsey*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Deborah King*, Attorney-International, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Paul C. Rosenthal* and *David C. Smith*, Kelley Drye & Warren LLP, of Washington, DC, for defendant-intervenors.

Stanceu, Judge: Plaintiff Atar S.r.L. ("Atar"), an Italian pasta producer, brought this

action to contest the final determination ("Final Results") of the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department") concluding the ninth administrative review of an antidumping duty order on certain pasta from Italy (the "subject merchandise"). *See Notice of Final Results of the Ninth Admin. Review of the Antidumping Duty Order on Certain Pasta from Italy*, 72 Fed. Reg. 7,011 (Feb. 14, 2007) ("*Final Results*"). At issue in this case are the Department's calculations of the indirect selling expense ("ISE") rate and the constructed value profit rate, both of which are components of the normal value of Atar's subject merchandise when normal value is determined according to the constructed value ("CV") method prescribed in the antidumping statute. Before the court is the decision (the "Third Remand Redetermination") Commerce prepared in response to the remand order the court issued in its third opinion in this litigation. *Final Results of Third Redetermination Pursuant to Ct. Remand* (Dec. 6, 2011), ECF No. 117 ("*Third Remand Redetermination*"). The Final Results assigned Atar a weighted-average dumping margin of 18.18%. *Final Results*, 72 Fed. Reg. at 7012. The Third Remand Redetermination determined for Atar a revised margin of 11.76%. *Third Remand Redetermination* 21. The court sustains the Third Remand Redetermination.

## I. BACKGROUND

The court's three previous opinions in this litigation present the background of this litigation, which is supplemented herein.

In *Atar, S.r.L. v. United States*, 33 CIT __, 637 F. Supp. 2d 1068 (2009) ("*Atar I*"), the court held that Commerce failed to apply a "reasonable method," as required by section 773(e)(2)(B)(iii) of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1677b(e)(2)(B)(iii) (2006), when it calculated constructed value profit and ISE rates for Atar's merchandise. In the Final Results, Commerce based its CV profit and ISE rates on data from sales of the six respondents in

the previous (eighth) review of the antidumping duty order, excluding sales made outside the
ordinary course of trade, *i.e.*, sales made below cost.  *Atar I*, 33 CIT at __, 637 F. Supp. 2d
at 1085.

In *Atar, S.r.L. v. United States*, 34 CIT __, 703 F. Supp. 2d 1359 (2010) ("*Atar II*"), the
court rejected the constructed value profit rate Commerce determined in the remand
redetermination responding to *Atar I* (the "First Remand Redetermination").  The court held that
Commerce did not comply with the "profit cap" provision of § 1677b(e)(2)(B)(iii).  *Atar II*,
34 CIT at __, 703 F. Supp. 2d at 1367.  In the First Remand Redetermination, Commerce based
its CV profit and ISE calculations on data from two of the six eighth-review respondents, which
Commerce chose because it determined that these were the only respondents in the eighth review
that realized an overall profit on sales of the like products in the home market during the period
of that review.  *Results of Remand Redetermination Pursuant to Ct. Remand Order* (Sept. 3,
2009), ECF No. 85 ("*First Remand Redetermination*").  In response to the court's remand order
rejecting the Final Results, Commerce did not exclude below-cost sales made by those two
respondents.  *Id.* at 1-2.

In *Atar, S.r.L. v. United States*, 35 CIT __, 791 F. Supp. 2d 1368 (2011) ("*Atar III*"), the
court held that Commerce, in issuing a second redetermination upon remand (the "Second
Remand Redetermination") that did not change the ISE and profit rate calculations reached in the
First Remand Redetermination, failed to determine a lawful profit cap.  *See Results of*
*Redetermination Pursuant to Ct. Remand Order* (Jul. 19, 2010), ECF No. 105 ("*Second Remand*
*Redetermination*").  Specifically, the court held that Commerce erred in concluding that the
Second Remand Redetermination's constructed value profit rate, *i.e.*, "the weighted-average
profit rate of the two respondents that earned a profit in the *Eighth Administrative Review*, after

including sales made both within and outside the ordinary course of trade," also could serve as a lawful profit cap. *Atar III*, 35 CIT at \_\_, 791 F. Supp. 2d at 1374 (internal quotation omitted).

On November 7, 2011, Commerce invited Atar and defendant-intervenors to comment on a draft, pre-issuance version of a written decision Commerce intended to release as the Third Remand Redetermination. *Letter from Program Manager, AD/CVD Operations to Atar* (Nov. 7, 2011) (Remand Rec. No. 3) ("*Request for Comments*"). Atar raised an objection in a submission filed on November 14, 2011. *Letter from Atar to the Sec'y of Commerce* (Nov. 14, 2011) (Remand Rec. No. 7) ("*Atar's Comments on Draft Remand Results*"). The defendant-intervenors, consisting of American Italian Pasta Company, Dakota Growers Pasta Company, and New World Pasta Company, filed a comment submission objecting to the profit cap determination. *Letter from Def.-Intervenors to the Sec'y of Commerce* (Nov. 11, 2011) (Remand Rec. No. 6).

On December 6, 2011, Commerce filed the Third Remand Redetermination, which essentially was the same as the draft version save for a section responding to comments. On January 5, 2012, plaintiff commented to the court, urging the court to order another remand. Pl.'s Comments on the U.S. Department of Commerce's Dec. 6, 2011 Remand Determination (Jan. 5, 2012), ECF No. 120 ("Atar's Comments"). On February 15, 2012, defendant and defendant-intervenors filed submissions rebutting Atar's arguments and advocating affirmance of the Third Remand Redetermination. Def.'s Reply to Pl.'s Comments Upon the Third Remand Redetermination (Feb. 15, 2012), ECF No. 123; Def.-Intervenors' Reply to Pl.'s Comments on the Third Remand Redetermination (Feb. 15, 2012), ECF No. 124.

## II. DISCUSSION

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980 ("Customs Courts Act"), 28 U.S.C. § 1581(c) (2006), which grants this Court jurisdiction of actions commenced under section 516A of the Tariff Act, 19 U.S.C. § 1516a, including those contesting the final results of an administrative review issued under section 751 of the Tariff Act, 19 U.S.C. § 1675(a). The court will sustain the Department's redetermination if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law. *See* Tariff Act, § 516A, 19 U.S.C. § 1516a(b)(1)(B)(i).

Previously in this litigation, the court affirmed the Department's decision to determine the normal value of Atar's subject merchandise according to the constructed value method, specifically affirming the Department's findings that Atar did not have a viable home market or comparison market. *Atar I*, 33 CIT at __, 637 F. Supp. 2d at 1092. Therefore, the lawful determination of a CV profit rate, a profit cap, and a CV ISE rate are the only remaining issues in this litigation. In response to the remand order the court issued in *Atar III*, the Third Remand Redetermination calculated a constructed value profit rate, a profit cap, and a constructed value ISE rate for Atar's subject merchandise. *Third Remand Redetermination* 1. The court concludes, for the reasons discussed below, that the Third Remand Redetermination must be sustained.

### A. Calculation of a Constructed Value Profit Rate

Commerce calculated the constructed value profit rate using the method it used in the Final Results, which based the profit rate on a weighted average of the data from the sales of subject merchandise made in the home country and in the ordinary course of trade by the six respondents from the prior (eighth) administrative review. *Third Remand Redetermination* 5. Commerce calculated this rate under the third of three alternative statutory methods, as presented

in the final clause of section 773(e)(2)(B) of the Tariff Act ("clause (iii)"), which directs that an

amount realized for profit be determined

> based on any other reasonable method, except that the amounts allowed for profit
> may not exceed the amount normally realized by exporters or producers . . . in
> connection with the sale, for consumption in the foreign country, of merchandise
> that is in the same general category of products as the subject merchandise.

19 U.S.C. § 1677b(e)(2)(B)(iii). In *Atar I*, the court rejected the method used in the Final

Results as arbitrary and unreasonable. 33 CIT at __, 637 F. Supp. 2d at 1087-89. In *Atar III*,

however, the court stated that "Commerce, on remand, may be able to explain adequately why a

CV profit amount that is redetermined by a method excluding non-ordinary-course sales satisfies

the 'reasonable method' requirement of clause (iii)." 35 CIT at __, 791 F. Supp. 2d at 1380. The

court made this statement in view of the intervening decision of the U.S. Court of Appeals for

the Federal Circuit in *Thai I-Mei Frozen Foods Co. v. United States*, 616 F.3d 1300, 1308-09

(Fed. Cir. 2010), which held that Commerce acted in accordance with law in excluding from the

CV profit determination that it made in that case, which involved an administrative review of an

antidumping duty order on frozen shrimp from Thailand, the data on sales in a third-country

comparison market (Canada) that were made outside the ordinary course of trade.

The profit cap Commerce calculated in the Third Remand Redetermination was lower

than the underlying CV profit rate determination, and as a result Commerce determined CV

profit according to its profit cap, not the underlying profit rate determination. Because a CV

profit rate calculated by some means other than those Commerce used may have been lower than

the profit cap, the court normally would consider, first, whether the underlying CV profit rate

calculated for the Third Remand Redetermination was lawful. However, no challenge to this rate

is properly before the court in this remand proceeding. Atar vaguely alludes to this rate in its

comments to the Department on the draft version of the Third Remand Redetermination, stating

that "[as] set forth herein, the Department's calculation of the margin for Atar continues to be improper as the Department's method for calculating the *profit* and profit cap[] does not comport with the profit cap and the reasonable method requirements of Section 773(e)(2)(B)(iii) of the Tariff Act of 1930." *Atar's Comments on Draft Remand Results* 1 (emphasis added). This statement, however, is the only reference in the submission to a challenge to the underlying profit rate. The argument "set forth therein" is that "the Department's decision to continue to weight-average the profits and ISE's [*sic*] results in a calculation which does not properly reflect the amount 'normally realized' by exporters and producers." *Id.* at 2. By grounding its objection in the statutory language requiring determination of an amount "normally realized by exporters or producers," Atar expressly limits its argument to the profit cap. *See* 19 U.S.C. § 1677b(e)(2)(B)(iii) (defining the profit cap as the "the amount normally realized by exporters or producers . . . in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise . . ."). Even were the court to consider Atar's vague allusion to the underlying profit rate sufficient to qualify as a challenge to that rate, it would conclude that Atar abandoned any such challenge in its comments to the court. There, Atar presents only a cursory discussion, objecting that the Remand Redetermination does not "address significant concerns raised by the Court in the opinion that accompanied the Remand order" and, in support of that objection, cites language from *Atar III* in which the court discusses shortcomings in the Department's earlier profit cap. Atar's Comments 3-4. Absent from Atar's comments to the court is any discussion plainly contesting the underlying profit rate determination. Before the court, defendant-intervenors support the Third Remand Redetermination in the entirety and thereby do not oppose the

Department's calculation of an underlying CV profit rate for Atar's merchandise.  The court

sustains that rate as unopposed by any party to this case.

### B.  The Profit Cap

In the Third Remand Redetermination, Commerce calculated Atar's profit cap using a

weighted average of the data from the reported home-market sales of the foreign like products

made by the six respondents from the prior (eighth) administrative review.  *Third Remand*

*Redetermination* 9.  Commerce included the data from all reported sales, including those not

made above cost.  *Id.* at 11.  The court concludes that Commerce used a reasonable method of

determining an amount of profit that is "normally realized by exporters or producers . . . in

connection with the sale, for consumption in the foreign country, of merchandise that is in the

same general category of products as the subject merchandise."  19 U.S.C. § 1677b(e)(2)(B)(iii).

The inclusion of all sales, both above-cost and below-cost, in the profit cap calculation produced

a result that more accurately reflected the profit conditions in the home market as a whole than

would one confined to sales made in the ordinary course of trade.  The court addressed this point

in *Atar III*, opining that "[as] demonstrated by the record evidence that four of the six [eighth-

review] respondents failed to realize an overall profit, below-cost sales were a significant feature

of the home-market conditions affecting the marketing of pasta in Italy."  *Atar III*, 35 CIT at __,

791 F. Supp. 2d at 1380.  The court reasoned that a profit cap should not be determined, as

Commerce previously did in this proceeding (when it excluded the data of four of the six

producers), "using an incomplete set of data that could not reflect the actual conditions affecting

profitability in the home market."  *Id.* at __, 791 F. Supp. 2d at 1378.  And as the Court of

International Trade has stated in the past, "the goal in calculating CV profit is to approximate the

home market profit experience."  *Geum Poong Corp. v. United States*, 26 CIT 322, 327, 193 F.

Supp. 2d 1363, 1370 (2002); *see Floral Trade Council v. United States*, 23 CIT 20, 30, 41 F. Supp. 2d 319 (1999) (concluding that a profit cap of zero was appropriate where home-market producers of merchandise in the same general category of products as the subject merchandise did not realize a profit).

Taking issue with the profit cap calculation, Atar argues that the Department unlawfully based the profit cap on a weighted average, instead of a simple average, of the data of the six respondents from the prior review. Atar's Comments 3-4. Atar argues that weight-averaging of these data "did not appropriately reflect the data of all of the other producers," pointing to the fact that one of those six respondents had far greater sales volume and profits than the others and that, as a result, the data of that respondent received inordinate weight. *Id.* at 4.

The profit cap provision imposes two express conditions on the profit cap calculation: (1) that it be based on the profit experience of "exporters or producers . . . in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise"; and (2) that it reflect the amount of profit those exporters or producers "normally realized" in connection with those sales. 19 U.S.C. § 1677b(e)(2)(B)(iii). The statute does not direct Commerce to determine the profits "normally realized" through any specific method. Commerce explained the decision to use a weighted average, as opposed to a simple average, by stating that a weighted average "takes into account the proportionate volume each producer's home market sales represent in relation to the total sales, in determining the profit for the market under consideration." *Third Remand Redetermination* 19.

On the facts of this case, the court cannot conclude that the Department's decision to use a weighted average was unreasonable or inconsistent with the statute. Commerce used the data

on all sales, above and below cost, of all producers in the home market, and therefore cannot credibly be accused of basing a profit cap on an incomplete set of data that fails to represent the entire home-market profit experience. Although a simple average would avoid the circumstance to which Atar objects, *i.e.*, the large effect on the outcome resulting from the data of a single producer claimed to be dissimilar to Atar, a simple average arguably would understate the effect of the data of the large producer and give disproportionate effect to the data of the other, smaller eighth-review producers. Although the data of the large producer may be described as "atypical" when compared with the data of the others, the fact remains that the large producer accounted for a significant portion of the home market. A weighted-average method of determining the profit cap recognizes this fact in arriving at a determination of the level of profit that is "normally realized" in the home market. Commerce is obligated to determine an accurate margin, *see Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1190 (Fed. Cir. 1990), but here it is at least arguable that neither a weighted average nor a simple average would produce a perfectly "accurate" result appropriate for Atar. Commerce, for valid reasons, may well have decided instead to use a simple average instead of a weighted average, and in that event the result may have been held to be in accordance with law. However, Commerce must be allowed a degree of discretion as to its methodological choices in determining a profit cap. The court concludes that, on these facts, the choice between the two methods is one that must be left to the Department's reasonable discretion.

### C. Indirect Selling Expense

The Third Remand Redetermination calculated Atar's indirect selling expense ratio "using the weighted-average of the ISE rates calculated for each of the six respondents" from the eighth administrative review. *Third Remand Redetermination* 11. Commerce explained that

"the ISE rate would bear no relationship to the profit ratios used to calculate Atar's CV profit unless the Department used data from the same companies to calculate both CV profit and ISE." *Id*.  It explained, further, that "a company's profit amount is a function of its total expenses and, therefore, is intrinsically tied to the other financial ratios for the company." *Id.*  Under clause (iii), Commerce is to determine selling, general and administrative expenses according to a "reasonable method."  19 U.S.C. § 1677b(e)(2)(B)(iii).  The court concludes that, consistent with this provision, Commerce has reasonably determined a rate for Atar's indirect selling expense.

In commenting to the court on the Third Remand Redetermination, Atar devotes only one conclusory statement to the ISE rate, objecting that "[t]he Department has based the profit and the ISE's [*sic*] on un-representative data."  Atar's Comments 1.  As the court observed previously in this Opinion, Atar specifically directs its objection to the use of a weighted average to the issue of the profit cap calculation.  Atar's comment submission to the court does not explain why Atar considers the data Commerce used for the ISE rate to be unrepresentative, and on this record the court does not agree with Atar's negative characterization of those data. Commerce used the data pertaining to the eighth-review respondents because it had no usable, non-proprietary home-market sales data from a respondent in the ninth review from which to calculate an ISE rate.  On the record before Commerce, a weighted average of the ISE-related data from all six eighth-review respondents cannot fairly be characterized as unrepresentative.

D.  Atar's Objection Arising from the Corticella Data on the Record of the Ninth Review

Atar argues that through no fault of its own it was prejudiced because Corticella Molini e Pastifici S.p.A. ("Corticella"), the only respondent in the ninth review other than Atar that received a dumping margin based on its own sales data, failed to meet the obligation imposed by

the Department's regulation, 19 C.F.R. § 351.304 (2008), to place on the record a public summary of confidential data on its home-market sales in the ninth review. Atar's Comments 2-3. Atar posits that, as a result of that failure, Atar received a higher margin than it otherwise would have been assigned. *Id.* Atar argues that the court and Commerce should "take into account" the rate that Atar would have received had Corticella complied with the regulation. *Id.* at 2. On the question of fashioning a possible remedy, Atar argues that "the fact that such data could not form the 'basis' of the calculation[] does not mean that the Department and the Court cannot take notice of what should have been the proper rate for Atar and ensure that the final selected rate bears some relationship to such rate." *Id.* The court rejects Atar's objection based on the Corticella sales because Atar did not raise this issue before the Department in the remand proceeding and thereby failed to exhaust its administrative remedies.

Atar is correct that Commerce, concerned that use of the confidential data of Corticella would disclose data protected from disclosure as business proprietary information, resorted instead to the data of respondents in the eighth review. It is possible that Atar was prejudiced by the absence of usable, non-proprietary data on Corticella's sales, and it is also possible that Commerce, in determining a revised margin for Atar, could have devised some means of ameliorating any adverse effect on Atar resulting from Corticella's noncompliance. However, Commerce was not given the chance to address Atar's objection when preparing the Third Remand Redetermination. On November 7, 2011, Commerce solicited comments from the parties on the draft version of the Third Remand Redetermination. *Request for Comments.* In its November 14, 2011 comment submission to the Department, Atar challenged only the Department's decision to use a weighted average. *Atar's Comments on Draft Remand Results.* Although it failed to raise before the agency its argument concerning the Corticella data, Atar

now urges the court to require Commerce to address the matter in a fourth remand submission. Because the Department did not have the opportunity to consider Atar's objection in preparing the determination now under judicial review, the court declines to do so.

This Court is directed by statute to require the exhaustion of administrative remedies where appropriate. Customs Courts Act, § 301, 28 U.S.C. § 2637(d). The exhaustion doctrine applies to remand proceedings. *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375 (Fed. Cir. 2008). The purpose of the exhaustion requirement is to ensure that a reviewing court conducts its judicial review of an agency decision only after the agency has had the opportunity to consider, and rule on, the matter in question. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). That did not occur in this remand proceeding.

Exceptions to the exhaustion requirement have been judicially recognized, most notably in situations where exhaustion would have been futile or where a pure legal question is involved. *See Corus Staal BV v. United States*, 502 F.3d 1370, 1378-79 & n.4 (Fed. Cir. 2007). However, the court has no basis to conclude that Atar's raising its objection in its comments to Commerce would have been futile. Commerce did not state in the draft version of its determination that it would be unreceptive to that objection. Moreover, the objection is not grounded purely in a question of law. Applying an exception to exhaustion is a matter for the court's discretion. *Id.* at 1379. The circumstances of this case do not justify the court's excusing the failure of Atar to press its objection before the agency that had the responsibility for issuing the determination now before the court.

### III. CONCLUSION

The Third Remand Redetermination complies with the court's order in lawfully determining a profit cap and applying it as a limitation on the constructed value profit

determination.  The Department's determination of an underlying profit rate is not validly

contested by any party and is sustained on that basis.  Commerce determined an ISE rate

according to a reasonable method, as required by statute.  Finally, the court rejects, for failure to

exhaust administrative remedies, Atar's challenge to the Third Remand Redetermination based

on the Corticella data.  Accordingly, the court will enter judgment affirming the Third Remand

Redetermination.

                                                                    /s/ Timothy C. Stanceu
                                                                    Timothy C. Stanceu
                                                                    Judge

Dated: July 31, 2012
          New York, New York